**STATE OF HAWAI'I**, Plaintiff–Appellee, v. **BARTON ADAMS**, Defendant–Appellant

NO. 16134

(CR. NO. 90–0259(2))

SEPTEMBER 9, 1994

BURNS, C.J., HEEN, AND ACOBA, JJ.

OPINION OF THE COURT BY HEEN, J.

In this appeal from his Second Circuit Court jury trial conviction on three counts of Sexual Assault in the Second Degree in violation of Hawaiʻi Revised Statutes (HRS) § 707–731(1)(a) (Supp. 1992),[1] Defendant–Appellant Barton Adams (Defendant) asserts that the trial court committed three reversible errors. We will only address the questions of whether the trial court erred in (1) denying Defendant's motion for a new trial (the Motion) and (2) refusing to allow Defendant to introduce (a) evidence that the complaining witness (CW) had a sexually transmitted disease, and (b) a videotape recorded about five months after the alleged assault, which showed

---

[1] Defendant was acquitted of a similar charge under Count III of the indictment, which will be referred to in the opinion as Count III.

CW dancing suggestively at a Maui nightclub.[2] As discussed below, we conclude that the trial court erred in denying the Motion; however, the trial court correctly rejected the proffered evidence.

## I. Background Facts

The alleged offenses took place on March 29, 1990. On that day CW had gone to work as a temporary secretary for Defendant, an osteopath.[3] Although CW and Defendant differ in their versions of the details of the incident, it is quite clear that at the end of the day Defendant began to massage CW's neck and shoulders. Eventually, they both went into an examination room at the rear of Defendant's

---

[2] We note that Defendant also argues that the lower court erred in denying his Hawai'i Rules of Penal Procedure Rule 48 (1977) motion to dismiss. We find no merit in Defendant's argument. First, Rule 48(c)(3) provides that periods of delay resulting from continuances "granted at the request *or* with the consent of the defendant *or* his counsel[,]" shall be excluded when calculating whether a trial was commenced within six months of a defendant's arrest or charge, as required by Rule 48(b). The facts indicate that the continuances cited by Defendant were requested by defense counsel and, therefore, constitute excludable periods. Consequently, the rule mandates their exclusion. *State v. Miller*, 4 Haw. App. 603, 671 P.2d 1037 (1983). Second, the cases cited by Defendant in support of his argument are inapposite.

Thus, even though the lower court erred in excluding 15 days delay caused by court congestion, *State v. Kahawai*, 9 Haw. App. 205, 831 P.2d 936 (1992), Defendant was brought to trial well within the requisite six–month period.

[3] Osteopathy is defined as "[a] system of medical practice based on the theory that diseases are due chiefly to a loss of structural integrity in the tissues and that this integrity can be restored by manipulation of the parts supported by the use of medicines, surgery, proper diet, and other therapy." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1597 (1981).

office. In the examination room, either at Defendant's suggestion or on her own initiative, CW partially undressed, donned an examination gown, and lay prone on the examining table in order to allow Defendant to continue the massage. As Defendant's ministrations continued down CW's torso, he either persuaded her to remove the rest of her clothing or removed the clothing himself, apparently without protest from CW.

Defendant admitted that during the massage, he penetrated CW's vagina with his finger as alleged in Counts I, II, and IV of the indictment. However, he denied penetration with his tongue as alleged in Count III.

Defendant testified that CW was "very warm and very flirtatious" during the day; that as a result he believed that she was receptive to engaging in sexual activity with him; and that during the acts of penetration, CW never protested or resisted him.

CW testified that she did not consent to any of Defendant's actions and had told Defendant to stop. However, CW did admit on cross–examination that she told the police that she was so afraid that she did not say anything or even look to see what Defendant was doing to her. CW also admitted that she told the grand jury that during the time when Defendant was allegedly performing the act charged in Count III, she did not say anything to him.

## II. New Trial

The jury returned its verdict on January 30, 1992, and Defendant filed the Motion on February 19, 1992. [4] The Motion's salient claim was that Defendant was

---

[4] The period for filing a motion for new trial was extended to February 19, 1992, by stipulation and order entered on February 10, 1992.

deprived of his "right to a fair and impartial jury because of prejudicial statements by a juror based on her personal experience and not on evidence in the record[.]" [5]

## A.

In *State v. Furutani*, 76 Hawai'i 172, 873 P.2d 51 (1994), the supreme court stated that a motion for a new trial is addressed to the trial court's sound discretion, and its decision will not be disturbed absent a clear abuse of discretion. Abuse of discretion occurs when the trial court clearly exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of one of the litigants. *Id.* at 179, 873 P.2d at 58.

A motion for a new trial based on juror misconduct can be based upon (1) failure of one or more jurors to respond truthfully to questions posed during *voir dire*, or (2) misconduct by one or more jurors during the course of the trial. *See id.* In either event, the ultimate inquiry is whether the misconduct deprived the defendant of the fundamental right to a trial by twelve impartial jurors. *Id.* If any member or members of the jury was shown not to be impartial, the trial court's failure to grant a new trial is an abuse of discretion. *Id.*

When the basis for the motion is juror misconduct during jury deliberations, the first responsibility of the trial court is to determine whether the misconduct is of a nature which could substantially prejudice the defendant's right to a fair trial. Whether it does rise to that level is ordinarily left to the discretion of the trial court. *Id.* at 180, 873 P.2d at 59 (citing *State v. Keliiholokai*, 58 Haw.

---

[5] Although Defendant asserted other grounds for a new trial in the Motion, he did not press them at the hearing.

356, 359, 569 P.2d 891, 895 (1977)). Where the trial court determines that the juror misconduct could substantially prejudice the defendant's right to a fair and impartial jury, a rebuttable presumption of prejudice is raised and the court must investigate the totality of circumstances to determine if the misconduct impacted the jury's impartiality. *Furutani*, 76 Hawai'i at 181, 873 P.2d at 60 (citing *State v. Williamson*, 72 Haw. 97, 102, 807 P.2d 593, 596 (1991)). In order to overcome the rebuttable presumption, the prosecution must show that the alleged deprivation of the right to a fair trial was harmless beyond a reasonable doubt. *Furutani*, 76 Hawai'i at 181, 873 P.2d at 60. Where the juror misconduct consists of improper comments and the defendant makes a *prima facie* showing that the comments have been used as a circumstance against him or her a presumption of prejudice is created. *Id.* In that event, the verdict will be set aside unless the prosecution clearly shows beyond a reasonable doubt that the juror's comments could not have affected the verdict. *Id.* at 185–86, 873 P.2d at 64–65.

## B.

As evidence of his claim of juror misconduct, Defendant submitted to the lower court (1) the affidavits of two jurors concerning statements made by juror Higa (Higa) during the deliberations; and (2) portions of the transcript of the *voir dire* examination of the jury.

One affidavit reads in pertinent part as follows:

2. When the jurors made their views known near the beginning of the deliberations, the jury was split.

3. During the discussion that followed, one juror raised the issue that if the events occurred as [CW] said they did, why did she not physi-

cally defend herself or resist. In response, [Higa] stated that perhaps [CW] froze. [Higa] went on to explain that she herself had been subjected to sexual activity against her will four times in her life, at ages 9, 10, 17, and 22, by different men, and that each time this occurred, she had frozen up.

4. Later in the deliberations, [Higa] again stated words to the effect that "It happened to me; I know what the feeling's like when you freeze up," and told the other jurors words to the effect that "You don't know how it feels until it happens to you."

The second affidavit stated in part that Higa told "the other jurors that she had been sexually assaulted, molested or abused four times in her own life, and that she had frozen up the first two or three times it happened to her."

When the Motion was heard, neither side presented any testimonial evidence. The evidence consisted only of the affidavits and the transcript. Nevertheless, the trial court entered extensive findings of fact (findings) and conclusions of law (conclusions) and an order denying the Motion. Defendant challenges findings no. 24, 26, 27 and 28 and part of conclusion no. 1. The challenged findings read as follows:

24. In light of the instructions given to the jury, [Higa's] comments indicate she had a misconception of the law presently in effect as it related to the elements of the offense of Sexual Assault in the Second Degree and presence or absence of physical resistance on the part of [CW].

26. [Higa's] comments during deliberations did not constitute a vouching for [CW] or an

attempt to secure the jury's acceptance of [CW's] reliability because [CW] never testified that she "froze" in the course of the assaults.

27. [Higa's] comments during deliberations do not relate to a central issue in the case because the comments related to discussion about the presence or absence of physical resistance by [CW] which was not an element of the offenses charged in this case or of the defense of consent.

28. [Higa's] comments alone do not demonstrate she was not an impartial juror.

Conclusion no. 1 reads in pertinent part as follows:

1. . . . *State v. Larue*[6] does not control the result in this case, however, because [Higa's] comments did not vouch for CW's testimony or attempt to secure CW's testimony, and [Higa's] comments were not relevant to a central issue in this case.

(Footnote added.)

The court's findings are reviewed under the clearly erroneous rule, and will not be set aside unless the findings are not supported by substantial evidence or the reviewing court is left with a definite and firm conviction that a mistake has been made. *State v. Hutch*, 75 Haw. 307, 861 P.2d 11 (1993). The court's conclusions are freely reviewable and will not be overturned if they reflect the application of the correct rule of law. *Furutani*, 76 Hawai'i at 180, 873 P.2d at 59.

We construe the findings and conclusions as the lower court's determination either that (1) Higa's remarks were not substantially prejudicial to Defendant's right to an

---

[6] 68 Haw. 575, 722 P.2d 1039 (1986).

impartial jury and did not warrant further investigation into their impact on the other jurors' impartiality; or (2) Higa's remarks were harmless beyond a reasonable doubt, i.e., they could not have affected the jury's verdict.

After a thorough review of the record, we conclude that the challenged findings are clearly erroneous, conclusion no. 1 is wrong, and the lower court abused its discretion in denying the Motion.

### 1.

First, we note that there is no evidence to support findings no. 24 and 26 that Higa "had a misconception of the law . . . related to the elements of the offense" in this case, since no testimonial evidence was taken when the Motion was heard. Moreover, the question for the trial court was not whether Higa correctly understood the law, but whether her remarks were substantially prejudicial to Defendant's right to an impartial jury.

In this regard, it is clear from the affidavits that Higa revealed her experiences when the jurors were discussing factual matters, not the applicable law. The first time Higa made her revelations she was obviously responding to another juror's question as to why, if the events occurred as they did, CW did not defend herself or resist. Later in the deliberations she again described her own experiences. Higa's remarks strongly suggest that she was explaining CW's reaction to the alleged assault based on her own experiences. Whether Higa intended it or not, her remarks certainly had the effect of vouching for CW's contention that she had not consented. The fact that CW did not testify that she had "frozen" does not vitiate the import or the impact of Higa's remarks, since on cross–examination CW did admit that she told the police that she was so frightened that she said nothing and told

the grand jury that she did not say anything to Defendant when he was allegedly performing the act alleged in Count III. CW's reactions may certainly be construed as "freezing".

In the context of the jury deliberations, Higa's remarks clearly could have substantially prejudiced Defendant's right to an impartial jury. Consequently, the lower court abused its discretion in not examining the jurors individually and, ultimately, in denying the Motion.

### 2.

Findings no. 26 and 27 are essentially the lower court's factual determination that Higa's remarks were harmless because they did not constitute her vouching for CW's credibility and related to the presence or absence of physical or verbal resistance, which is not an element of the offense under HRS § 707–731(1)(a). We agree that the presence or absence of physical or verbal resistance is not an essential element of the offense, and the State was not required to prove either. However, we do not agree that Higa's revelations were harmless, since, as we will now demonstrate, they were germane to the jury's deliberations on the issues of Defendant's and CW's credibility and Defendant's state of mind.

### 3.

In 1986, the legislature extensively revised the relevant statutes to eliminate physical or verbal resistance as an element of sexual offenses. Act 314, § 57, 1986 Haw. Sess. Laws 593, 617–18. The present law defining the charged offenses in this case is as follows:

> (1) Sexual assault in the second degree is committed by a "person [who] knowingly subjects another person to an act of sexual penetration by compulsion[.]"

HRS § 707–731(1)(a) (Supp. 1992).

> (2) Compulsion means "absence of consent[.]"

HRS § 707–700 (Supp. 1992).

The statute requires proof beyond a reasonable doubt that the alleged victim did not consent to the act of penetration and that the defendant knew that he or she did not have the consent of the alleged victim to engage in the act of penetration.

### a.

The Hawai'i Penal Code does not define consent. We must therefore construe that term so as to give effect to the intention of the legislature as determined from the language of the statute itself. *Franks v. City and County*, 74 Haw. 328, 843 P.2d 668 (1993). Since there is nothing to indicate that the legislature intended to use that term in any but its usual sense, we are required to give the statutory language its plain and obvious meaning. *See State v. Ortiz*, 74 Haw. 343, 845 P.2d 547, *reconsideration denied*, 74 Haw. 650, 849 P.2d 81 (1993).

Consent signifies voluntary agreement or concurrence. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, at 482 (1981). Consent may be express or implied, and the jury in this case was instructed that it could not convict Defendant unless it found "beyond a reasonable doubt [CW] did not expressly or impliedly consent to sexual penetration."

## b.

The pertinent statutory provisions regarding state of mind, another essential element of the offenses, are as follows:

 (2) "Knowingly"

*   *   *

 (b) A person acts knowingly with respect to attendant circumstances when he is aware that such circumstances exist.

· HRS § 702–206(2)(b) (1985).

 [A] person is not guilty of an offense unless he acted . . . knowingly, . . . as the law specifies, with respect to each element of the offense."

HRS § 702–204 (1985).

 In any prosecution for an offense, it is a defense that the accused engaged in the prohibited conduct under ignorance or mistake of fact if:

 (1) The ignorance or mistake negatives the state of mind required to establish an element of the offense[.]"

HRS § 702–218(1) (1985).

A defendant's claim of mistake or lack of knowledge entitles him or her to an acquittal if the trier of fact determines from all the evidence that there is a reasonable doubt as to the defendant's guilt. HRS § 701–115 (1985). [7]

---

[7] Hawai'i Revised Statutes § 701–115 (1985) provides in pertinent part:

### c.

Thus, in this case, the State was required to prove beyond a reasonable doubt that CW did not consent to the acts of penetration and that Defendant knew or was aware from the attendant circumstances that he did not have CW's concurrence. Defendant's defense was that he acted under a mistake of fact which negatived his awareness of the lack of consent, i.e., he acted under the mistaken belief, occasioned by CW's actions during the day and her failure to say or do anything during the event, that he had her consent to commit the acts of penetration.

Although physical or verbal resistance is not an element that needs to be proven, evidence of its absence is probative of the defendant's state of mind. Additionally, its absence may be considered by the jury in determining whether the alleged victim impliedly consented. In this case, CW's actions throughout the day, as testified to by Defendant, "could be construed by reasonable jurors to be an invitation to sexual advances, and, coupled with her failure to object, by either words, or actions, to [Defendant's] advances, to constitute consent[,]" *State v. Calbero*, 71 Haw. 115, 126, 785 P.2d 157, 162 (1989), or at

---

**Defenses.** (1) A defense is a fact or set of facts which negatives penal liability.

(2) No defense may be considered by the trier of fact unless evidence of the specified fact or facts has been presented. If such evidence is presented, then:

(a) If the defense is not an affirmative defense, the defendant is entitled to an acquittal if the trier of fact finds that the evidence, when considered in the light of any contrary prosecution evidence, raises a reasonable doubt as to the defendant's guilt[.]

least to cause Defendant to reasonably believe that he had her consent.

Higa's revelations were clearly prompted by the jurors' discussion of the credibility of Defendant and CW and the question of whether Defendant had acted with the state of mind required by the statutes, i.e., that he knew or was aware from the attendant circumstances that CW was not in concurrence with his actions.

## C.

In light of the *voir dire* transcript, finding no. 28 is also clearly erroneous. The transcript reveals that after Higa was selected as a potential juror, the prosecutor asked the panel generally if any of them had strong feelings about sexual assault cases that could affect the juror's impartiality. None of the jurors responded to the question. Later, defense counsel asked the panel if any of them had been sexually assaulted or abused, or had a friend or a family member who had been so abused, and the following colloquy took place between defense counsel and Higa:

> [DEFENSE COUNSEL]: Ms. Higa, can you tell us briefly what that was about without wanting to intrude on your privacy?
>
> [HIGA]: It was a relative of mine.
>
>       \*     \*     \*
>
> [DEFENSE COUNSEL]: Female relative?
>
> [HIGA]: Female. About the age of the —
>
> [DEFENSE COUNSEL]: What were the circumstances, please?
>
> [HIGA]: It was never really resolved. They never really did anything about it. She went through some counseling and that was all. They didn't pursue the case.

[DEFENSE COUNSEL]:   Did she decide not to pursue it?

[HIGA]:   Yeah.

[DEFENSE COUNSEL]:   Was she raped or what happened?

[HIGA]:   No — well, she was molested.

[DEFENSE COUNSEL]:   By who, do you mind?

[HIGA]:   It was a friend.

[DEFENSE COUNSEL]:   By a friend.  How did you feel about that?

[HIGA]:  Well, I guess I sympathized, but yet I can't really say because I don't know if it was true or not.

[DEFENSE COUNSEL]:   Do you think that would affect your judgment in this case?

[HIGA]:   No.

Higa never acknowledged her own experience.  As in the case of the juror in *State v. Larue*, 68 Haw. 575, 722 P.2d 1039 (1986), which is discussed below, had Higa's response been truthful she would unquestionably have been subjected to closer examination by defense counsel and certainly was subject to being challenged for cause.

[It] is not necessary for prospective jurors to go so far as to tell lies during voir dire [sic] in order to justify a new trial.  On the contrary, "[u]nder some circumstances a juror's *nondisclosure* of information during jury selection may be grounds for a new trial."  Such nondisclosure may take the form of "knowingly conceal[ing] a bias or hostility towards the defendant."  And insofar as a "juror's . . . knowing concealment [can] itself [be] evidence that the juror was likely incapable of rendering a

fair and impartial verdict," the converse can also
be true; direct evidence of incapability of render-
ing a fair and impartial verdict may legitimately
give rise to an inference of prior knowing conceal-
ment.

*Furutani*, 76 Hawai'i at 184, 873 P.2d at 63 (emphasis in
original; citations omitted).

Moreover, if Higa's *voir dire* responses were truthful,
or complete, then the situation is even more egregious,
since the truthfulness of her revelations to the jury are
then highly doubtful. Finally, the fact, as the State points
out, that Defendant accepted other jurors who related that
they or someone they knew had a similar experience is
irrelevant.

## D.

It follows, then, that the lower court's conclusion no. 1,
that *Larue* was not controlling precedent for this case, was
wrong as a matter of law. *Larue* was a case in which the
defendant was charged with sexually assaulting three
very young children. The victims were somewhat older
when they testified at the trial. During deliberations, the
jury discussed the reliability of the minors' testimony, i.e.,
whether they could actually remember what happened
when they were very young. Seven jurors heard the
foreperson state that when she was three years old an
uncle "touched" her and that if she were to take the
witness stand she would be able to remember and tell
what happened. The supreme court found that the
foreperson was "vouching for, and attempting to secure
the acceptance by the jury of, the reliability of" the minors'
testimony based upon her recollection of her own experi-
ences and not upon the minors' testimony or the evidence

in the record. The foreperson had not revealed her past experiences during jury *voir dire*, and the supreme court observed that if she had she would undoubtedly have been subject to a challenge for cause, since "a person with such an experience and recollection thereof cannot, no matter how hard he or she tries, really be an impartial juror." *Id.* at 578, 722 P.2d at 1042. The foreperson, at least, judged the witness' credibility on the basis of her own strikingly similar traumatic experience and was therefore not impartial. Moreover, the supreme court held "that it [was] impossible to say beyond a reasonable doubt, the seven jurors who heard the remark were not influenced thereby in reaching their verdict." *Id.* The supreme court's findings and conclusions are remarkably applicable to this case.

## III. Evidentiary Rulings

In a motion *in limine*, Defendant requested the trial court to allow him to introduce (A) evidence that CW was afflicted with and taking medication for herpes, a primarily sexually transmitted disease; and (B) a videotape of CW taken approximately five months after the alleged assault which showed her in a Maui nightclub engaged in highly sexually suggestive dance movements.

Contrary to Defendant's argument on appeal, the trial court did not rule that the herpes evidence was inadmissible under Hawai'i Rules of Evidence Rule 412, HRS Chapter 626 (Supp. 1992). Rather, the trial court ruled that both the alleged affliction and the videotape were irrelevant. However, the court also ruled that Defendant could testify that CW engaged him in a discussion of sexually transmitted diseases and the medication used in their treatment.

### A.

Defendant argues that the evidence of the herpes infection and the conversation concerning such diseases and their medication were relevant to his claim of CW's warm and flirtatious manner, and supported his defense that her behavior created in his mind the belief that she would be receptive to engaging in sex with him. We disagree.

Even though CW's warm and flirtatious manner, and her discussion of sexually transmitted diseases, which the lower court specifically allowed him to testify to, may have been probative of Defendant's state of mind, the fact that CW was infected with herpes was not.

### B.

We agree with the trial court that the videotape was irrelevant. It was not probative of any fact in issue in the case.

### IV. Conclusion

For the reasons stated above, the judgment of conviction is vacated, and this matter is remanded to the lower court for further proceedings consistent with this opinion.

*Renee M. L. Yuen* and *Richard K. Perkins* (Yuen & Perkins, of counsel) on the briefs for defendant–appellant.

*Larry L. Butrick*, Prosecuting Attorney, and *Mark R. Simonds*, Deputy Prosecuting Attorney, County of Maui, on the brief for plaintiff–appellee.