32 P.3d 1097

STATE of Hawai'i, Plaintiff–Appellee,

v.

Willie JONES, also known as "Willis," Defendant–Appellant.

No. 20543.

Intermediate Court of Appeals of Hawai'i.

Oct. 16, 1998.

As Amended Oct. 21, 1998.

Certiorari Granted Nov. 17, 1998.

James M. Anderson, Deputy Prosecuting Attorney, City and County of Honolulu, on the brief, for plaintiff-appellee.

Edwin Lauder Baker, on the briefs, for defendant-appellant.

Before BURNS, C.J., and WATANABE and ACOBA, JJ.

ACOBA, Judge.

We hold that "ineffective consent" in a criminal case as set forth in Hawai'i Revised Statutes (HRS) § 702–235 (1993) is an attendant circumstance of the offense to which it is attributed and therefore a material element which must be proven beyond a reasonable doubt by the prosecution. We further hold that because there are four potential grounds upon which ineffective consent may be found, the jury must be informed that its decision must be unanimous as to at least one of these grounds before it may render a verdict of guilty on the offense involved. We also conclude that where the jury is instructed that a defendant's criminal liability may be based on the lack of consent of the complaining witness (the complainant) and is also instructed on ineffective consent, the jury must be advised that these bases for criminal liability are mutually exclusive. Thus, the jurors must reach unanimity on one of them as the basis for criminal liability as to the offense concerned. Because the ineffective consent instruction of the first circuit court (the court) failed to inform the jury of the foregoing propositions, the instruction was prejudicially erroneous.

Plaintiff–Appellee State of Hawai'i (the State) concedes that one of the counts for which Defendant–Appellant Willie Jones (Defendant) was convicted should be reversed. As to the remaining counts appealed by Defendant, we vacate and remand Defendant's February 3, 1997 judgment of conviction and sentence in this sexual assault case.

## I.

### A.

In July 1994, the complaining witness herein (the Witness), a fourteen-year-old female, lived at Schofield Barracks with her father, mother, and thirteen-year-old sister, Shantel. Ms. Sue Burris and her thirteen-year-old son, Anthony, friends of the Witness's family, also lived with them at that time. Latoya Givens (Latoya), also fourteen years old, was a friend of the Witness.

When Shantel and Anthony met him, Defendant represented himself as a stage manager and offered to sell them tickets to the "Tupac Shakur" concert scheduled for July 23, 1994. Defendant provided Shantel and Anthony with his pager number and volunteered to deliver the tickets to their home. The Witness's father agreed to purchase tickets from Defendant and from then on Defendant began to visit their home. On two or three occasions Defendant took the Witness and her friends to different places. A friendship developed between Defendant and the Witness, Shantel, Anthony, and Latoya. During their friendship, the Witness and Defendant discussed the Witness's interest in traveling and modeling. Defendant represented that he knew people involved in the modeling business and could help her obtain a job in that field.

About two weeks after the Tupac Shakur concert, the Witness's friends paged Defendant and asked him to take them to the beach. Defendant agreed and picked up the Witness, Shantel, Anthony, Latoya, and Lacretia, a four-year-old child whom Latoya was babysitting. They went to the Army recreation beach in Wai'anae. Later it was decided that Defendant would give Anthony, Shantel, Latoya, and the Witness individual lessons on how to drive his car.

Defendant allowed each one of them to drive down a stretch of flat road to the end of the road and back to the beach. During the Witness's drive, Defendant and the Witness switched seats at the end of the road because the car transmission kept stalling. After the Witness moved to the passenger seat, Defendant touched her leg, back, and right breast. The Witness told him to stop and moved

away from Defendant. Defendant ceased his touching and told the Witness to "look at it." The Witness looked at Defendant and saw that "he had his penis sticking out from his swimming shorts." The Witness turned away and when Defendant again invited her to "look at it," she replied, "I did." At this point, a security guard approached the vehicle and told Defendant that he could not park there. Defendant and the Witness then returned to the beach.

At Defendant's suggestion, most of the group agreed to return to Defendant's hotel for swimming at the hotel pool. At the hotel they proceeded to Defendant's room so he could make some telephone calls. While he was making the calls, the Witness, Shantel, Anthony, Latoya, and Lacretia went to the swimming pool. Defendant joined them about ten minutes later.

Defendant entered the pool and began to follow the Witness, telling her, "Give me a hug." When Defendant was face-to-face with the Witness he gave her a hug. The Witness did not reciprocate. Defendant then reached down and pulled the Witness's bathing suit to the side and "trie[d] to stick his penis" into her vagina. The Witness resisted by using her legs to push Defendant away and exited the pool.

After everyone was out of the pool, Defendant suggested that pizza be ordered. Everyone returned to Defendant's room to await the pizza delivery. Shantel asked for ketchup for her pizza, and was informed by Defendant that ketchup was available in the hotel lobby. Although the Witness had asked Latoya not to go, Latoya, Shantel, and Anthony left the room for the lobby, leaving the Witness with Defendant and Lacretia.

As the Witness was washing her hands in the bathroom, Defendant approached her at the wash basin and again discussed the possi-

bility of obtaining modeling contracts for her. Defendant then reiterated his previous request for a hug and pulled the Witness's sweat shorts down. The Witness tried to stop him by pulling her shorts back up. However, the second time Defendant pulled her shorts down he was able to insert his penis into her vagina three times before the Witness was successful in pulling her shorts back up and pushing Defendant away.

After this incident, the Witness waited in the living room area for her friends to return. Defendant remained in the bath-room area. Eventually the others returned with the ketchup. At some time before the pizza arrived, the Witness accompanied Defendant to his car to get his wallet, while Shantel, Anthony, Latoya, and Lacretia remained in the room. The Witness and Defendant returned to the room and Defendant paid for the pizza. After they had eaten, Defendant drove everyone back to Schofield Barracks.

A week or two later, the Witness told Latoya about the incidents with Defendant during her driving lesson, at the hotel swimming pool, and in Defendant's hotel room. Latoya repeated the conversation to the Witness's boyfriend, who then informed the Witness's parents. The Witness was taken for a medical examination and then to the police station where she gave a report to detectives.

### B.

Defendant was charged in a six-count indictment with committing the following acts "[o]n or about the 1st day of July, 1994, to and including the 23th [sic] day of August, 1994":

Count I: Sexual Assault in the Second Degree, HRS § 707–731(1)(a) [ (1993) ],[1] by knowingly subjecting the Witness to an act of sexual penetration [2] by compul-

---

1. Hawai'i Revised Statutes (HRS) § 707–731(1)(a) (1993) states, in pertinent part:

   **Sexual assault in the second degree.** (1) A person commits the offense of sexual assault in the second degree if:
   (a) The person knowingly subjects another person to an act of sexual penetration by compulsion[.]

2. HRS § 707–700 (1993) states:

   "Sexual penetration" means vaginal intercourse, anal intercourse, fellatio, cunnilingus, anilingus, deviate sexual intercourse, or any intrusion of any part of a person's body or of any object into the genital or anal opening of another person's body; it occurs upon any penetration, however slight, but emission is not required. For purposes of [HRS chapter 707], each act of sexual penetration shall constitute a separate offense.

sion[3] by inserting his penis into her vagina;

Count II: Attempted Sexual Assault in the Second Degree, HRS §§ 705–500 [ (1993) ][4] & 707–731(1)(a), by intentionally engaging in conduct which, under the circumstances as he believed them to be, constituted a substantial step in a course of conduct intended to culminate in his commission of the crime of Sexual Assault in the Second Degree, by attempting to knowingly subject the Witness to an act of sexual penetration by compulsion;

Count III: Sexual Assault in the Fourth Degree, HRS § 707–733(1)(b) [ (1993) ],[5] by knowingly exposing his genitals to the Witness under circumstances in which his conduct was likely to alarm the Witness or put her in fear of bodily injury;

Counts IV Sexual Assault in the Fourth Degree, through VI: HRS § 707–733(1)(a) [ (1993) ],[6] by knowingly subjecting the Witness, who was not his spouse, to sexual contact by compulsion or causing the Witness to have sexual contact[7] with him by compulsion, by placing his hand on her breast (Count IV); by placing his penis on her vagina (Count V); and by placing his hand on her vagina (Count VI).

3. " 'Compulsion' means absence of consent, or a threat, express or implied, that places a person in fear of public humiliation, property damage, or financial loss." HRS § 707–700.

4. HRS § 705–500 (1993) states, in part:

Criminal attempt. (1) A person is guilty of an attempt to commit a crime if the person:
(a) Intentionally engages in conduct which would constitute the crime if the attendant circumstances were as the person believes them to be; or
(b) Intentionally engages in conduct which, under the circumstances as the person believes them to be, constitutes a substantial step in a course of conduct intended to culminate in the person's commission of the crime. . . .

5. HRS § 707–733(1)(b) (1993) states, in pertinent part:

Sexual assault in the fourth degree. (1) A person commits the offense of sexual assault in the fourth degree if:
. . . .

## II.

Trial commenced on August 29, 1996. After the court denied defense counsel's request for advance payment of travel expenses for Anthony, defense counsel decided to proceed without calling Anthony as a witness.

The trial court then apprised Defendant of his right to testify.

During opening statements the following morning, the prosecutor objected to any reference by defense counsel to testimony by Latoya because the State did not intend to call her as a witness. Subsequently, defense counsel withdrew his request to call Latoya as a witness.

After the State rested its case, the defense moved for a judgment of acquittal on all counts. Based on the lack of evidence presented to prove that Defendant placed his hand on the Witness's vagina, the court granted the motion for acquittal as to Count VI.

The court then gave the defense time to confer regarding the right of Defendant to testify on his own behalf. When the defense informed the court that Defendant would not testify, the court conducted a colloquy with Defendant concerning his decision not to testify.

(b) The person knowingly exposes the person's genitals to another person under circumstances in which the actor's conduct is likely to alarm the other person or put the other person in fear of bodily injury[.]

6. HRS § 707–733(1)(a) (1993) states, in pertinent part:

Sexual assault in the fourth degree. (1) A person commits the offense of sexual assault in the fourth degree if:
(a) The person knowingly subjects another person to sexual contact by compulsion or causes another person to have sexual contact with the actor by compulsion[.]

7. HRS § 707–700 defines "sexual contact" as

any touching of the sexual or other intimate parts of a person not married to the actor, or of the sexual or other intimate parts of the actor by the person, whether directly or through the clothing or other material intended to cover the sexual or other intimate parts.

During the conference for settling jury instructions, an instruction on "ineffective consent" was agreed to as modified. Defense counsel did not request, nor did the court provide, jury instructions regarding the mistake of fact defense, instructions on lesser included offenses, or a specific "unanimity" instruction as to any of the counts.

On September 4, 1996, the jury found Defendant guilty as charged on the remaining five counts.

On February 3, 1997, the court sentenced Defendant to an extended term of imprisonment.

### III.

On appeal, the State concedes that there was no evidence to support Defendant's conviction on Count V. Accordingly, the conviction as to Count V is reversed.

### IV.

#### A.

As to the remaining Counts I–IV, we believe the jury's verdict was affected by the court's erroneous instruction on ineffective consent.

The subject instruction stated as follows:

In any prosecution, the complaining witness's consent to the conduct alleged or to the result thereof, is a defense if the consent negatives an element of the offense or precludes the infliction of the harm or evil sought to be prevented by the law defining the offense.

Consent is not a defense if:

(1) It is given by a person who is legally incompetent to authorize the conduct alleged; or

(2) It is given by a person who by reason of youth, mental disease, disorder, or defect, or intoxication is manifestly unable or known by the defendant to be unable to make a reasonable judgment as to the nature or harmfulness of the conduct alleged; or

(3) It is given by a person whose consent is sought to be prevented by the law defining the offense; or

(4) It is induced by force, duress, or deception.

The burden is upon the prosecution to prove beyond a reasonable doubt that the complaining witness did not consent to the conduct alleged or the result thereof. If the prosecution fails to meet its burden, then you must find the defendant not guilty.

The instruction is verbatim Hawai'i Jury Instructions Criminal (HAWJIC) No. 7.05, except in the HAWJIC version the portion pertaining to instances where consent is not a defense is enclosed by brackets. The court deleted the brackets in its instruction to the jury. The unbracketed portion of the HAWJIC instruction is obviously from HRS § 702–233 (1993), which sets forth the defense of consent as follows:

**Consent; general.** In any prosecution, the victim's consent to the conduct alleged, or to the result thereof, is a defense *if the consent negatives an element of the offense* or precludes the infliction of the harm or evil sought to be prevented by the law defining the offense.

(Emphasis added.) The defense of consent, thus, is counterpoised against the element common to sexual assault in the first degree (Count I), attempted sexual assault in the second degree (Count II), and sexual assault in the fourth degree (Count IV), that is, that Defendant's culpable act was done "by compulsion." "Compulsion" is defined, as the court instructed the jury, as either the "absence of consent" or an express or implied threat "that places a person in fear of public humiliation, property damage, or financial loss." HRS § 707–700 (1993). None of the parties contend that there was a threat of the kind defined in HRS § 707–700. The legal theory underlying these charges, then, was that the Witness did not consent to the acts charged.

But independent of the theory that the complainant did not consent, is the theory of criminal liability which admits consent but treats such consent as ineffective. That theory, embodied in the bracketed portion of the HAWJIC instruction, is clearly from HRS § 702–235:

**Ineffective consent.** Unless otherwise provided by [the Hawai'i Penal Code] or by the law defining the offense, consent does not constitute a defense if:

(1) It is given by a person who is legally incompetent to authorize the conduct alleged; or

(2) It is given by a person who by reason of youth, mental disease, disorder, or defect, or intoxication is manifestly unable or known by the defendant to be unable to make a reasonable judgment as to the nature or harmfulness of the conduct alleged; or

(3) It is given by a person whose improvident consent is sought to be prevented by the law defining the offense; or

(4) It is induced by force, duress or deception.

While it is true that "consent is not a defense" under one or more of the four grounds stated in HRS § 702–235, "lack of consent" is not thereby established for purposes of establishing criminal liability as impliedly suggested by the court's instruction. The absence of consent by a complainant is a separate and altogether different basis for imposing criminal liability than that set forth under the ineffective consent statute. Thus, a trial court must make the threshold decision of whether to instruct on ineffective consent at all, and if so, on which of the four grounds of ineffective consent to instruct.

### B.

■ Here, the court required the jury to consider all four grounds for ineffective consent. But as Defendant points out, the court "effectively instructed the jury that they [sic] could find [the Witness's] consent was ineffective for reasons which were not raised by the evidence presented." The State concedes that grounds (1) and (3) in the instruction which correspond to the parallel provisions of HRS § 702–235 were "inapplicable."

It was error to have instructed the jury on grounds of criminal liability not supported by any rational basis in the evidence or by the law.[8] The Witness was not a person "legally incompetent to authorize the conduct alleged," nor was her consent "sought to be prevented" under any of the statutes "defining the offenses" for which Defendant was charged. Because there was no evidence or law to support grounds (1) and (3), those parts of the instruction should not have been given. The impact of doing so would only result in confusing and misleading the jury into believing there was evidence to support grounds (1) and (3) or that the law permitted (1) and (3) to be applied in the case. We cannot endorse the State's contention that (1) and (3) "were simply inapplicable" and therefore "should not have confused or misled the jury." What would appear plain to our eyes and to counsel *now*, on appeal, would not necessarily be so to a lay jury told by the court that it must "follow these instructions." *See* HAWJIC 3.01.

### C.

We believe the instruction was also faulty because it failed to tell the jury that if the jury found there was no consent by the complainant, it should not consider that part of the instruction relating to ineffective consent. Since a finding that consent was given is the predicate for applying HRS § 702–235, further consideration of whether consent was ineffective was factually and legally foreclosed if the jury determined that consent was not given.

■ But in its present form, the instruction does not foreclose the possibility that in reaching their verdict, some of the jurors may have decided that the Witness did not consent, while other jurors may have determined that the Witness did consent but that her consent was ineffective. As we indicate, *infra*, ineffective consent, if found, becomes an element of the charged offense. Because the prosecution must prove "*every material element of the crime charged* beyond a reasonable doubt," *State v. Wallace*, 80 Hawai'i

---

8. We believe, nevertheless, that the first circuit court conscientiously attempted to render the proper instruction.

382, 406, 910 P.2d 695, 719 (1996) (internal quotation marks omitted; emphasis in original), and Defendant may only be convicted by a unanimous verdict, Defendant is entitled to jury unanimity with respect to the State's satisfaction of its burden on each of the material elements of the offenses charged. *State v. Arceo*, 84 Hawai'i 1, 30, 928 P.2d 843, 873 (1996). This principle of unanimity may be violated if the instruction allows for less than a unanimous decision of the jury with respect to a material element of a particular crime charged.

Here, for example, Defendant may be convicted of any of the sexual assaults on the alternative bases of lack of consent ("compulsion" as defined in HRS § 707–700) or ineffective consent. The instruction, however, fails to inform the jury that these bases are mutually exclusive. Accordingly, the instruction does not preclude the jury from reaching a guilty verdict with some but not all of the jurors resting their verdict on the Witness's lack of consent, and the other jurors agreeing to the verdict on a finding of the Witness's ineffective consent.

### D.

Furthermore, were we to assume all the jury members found that the Witness's consent was ineffective, we are unable to ascertain whether they reached a unanimous verdict as to any one of the appropriate ineffective consent grounds.

The instruction on ineffective consent, as worded, implies to us and would imply to the jury that there was, in the evidence, a rational basis for believing that the Witness did consent to conduct charged by one or some of Counts I, II, and IV. *State v. O'Daniel*, 62 Haw. 518, 527–28, 616 P.2d 1383, 1390–91 (1980) (defendant entitled to instruction on defense theory having any support. in evidence, "no matter how weak, inconclusive[,] or unsatisfactory"). Indeed, the State maintains on appeal that there was evidence to support grounds (2) and (4) in the instruction. It argues that "because of her youth Defendant believed the Witness would not be able to make a reasonable judgment—i.e. leave the area, ask to be taken home, or report Defendant's conduct ... [and] Defendant pretended to be her friend ... while his motivation was to have sex with her."

The ineffective consent statute makes the complainant's consent "meaningless" and thus irrelevant for purposes of proving consent as a defense. *See State v. Cardus*, 86 Hawai'i 426, 434, 949 P.2d 1047, 1055 (App.1998). However, the effect of giving an ineffective consent instruction is to make one or more of the circumstances designated as ineffective consent under HRS § 702–235 *an element of the offense which must be proven by the prosecution beyond a reasonable doubt.* As the commentary to HRS § 702–235 indicates, *"Facts which deprive consent of its effectiveness negative a defense, thereby making them elements of the offense* [, and w]ith respect to each element the defendant must act with a culpable state of mind...."* (Emphasis added.) Thus, the circumstances described in HRS § 702–235 become the attendant circumstances which must be proved as part of the charged offense affected. *See* HRS § 702–205 (1993).[9] If, as the prosecution contends, the circumstances described as ground (2) in the instruction were present under the evidence adduced, it was the burden of the prosecution to prove beyond a reasonable doubt that Defendant committed the act of sexual assault with the requisite state of mind, and that as attendant circumstances the complainant gave consent "by reason of [her] youth," and that the complainant's failure to make reasonable judgments was obvious or "known by the defendant."

Similarly, if, as the prosecution maintains, the jury might have also found, as stated in HRS § 702–235(4), that the Witness's consent was ineffective because it was "induced

---

9. HRS § 702–205 (1993) states:

**Elements of an offense.** The elements of an offense are such (1) conduct, (2) *attendant circumstances*, and (3) results of conduct, as:
  (a) Are specified by the definition of the offense, and

  (b) Negative a defense (other than a defense based on the statute of limitations, lack of venue, or lack of jurisdiction).
(Emphasis added.)

**30**

by force, duress[,] or deception," such attendant circumstances would also be required to be proven beyond a reasonable doubt.

There are problems, then, with the instruction as it pertains to ineffective consent. First, the instruction fails to advise the jury that ineffective consent is an element of the offense(s) affected which must be proven beyond a reasonable doubt by the prosecution. The instruction only informs the jury that with respect to the general consent defense, "[t]he burden is upon the prosecution to prove beyond a reasonable doubt that the complaining witness *did not consent* [.]" (Emphasis added.)

Second, there is nothing in the instruction which commands the jury to unanimously agree with respect to at least one of grounds (2) and (4). Thus, assuming the jury found ineffective consent, we cannot determine whether there was unanimity on the part of the jurors with respect to either one of the grounds in (2) and (4).

A defendant is entitled "to a unanimous verdict in a criminal prosecution, tried before a jury in a court of this state, . . . guaranteed by article I, sections 5 and 14 of the Hawai'i Constitution." *Arceo,* 84 Hawai'i at 30, 928 P.2d at 873. As we have observed, there must be jury unanimity with respect to each material element of the offense charged. Thus, "where [as here] evidence of multiple culpable acts is adduced to prove a single charged offense, the defendant is entitled either to an election by the prosecution of the single act upon which it is relying for a conviction or to a specific unanimity instruction." *Id.* at 30–31, 928 P.2d at 873–74. Because " '[t]he [prosecution] was not required [by the trial court] to [so] elect, nor was jury unanimity ensured with a clarifying instruction . . . [the defendant] is entitled to a new trial.' " *Id.* at 31–32, 928 P.2d at 874–75 (quoting *State v. Petrich,* 101 Wash.2d 566, 683 P.2d 173, 178 (1984)).

▮ If the trial courts intend to give an ineffective consent instruction where consent would otherwise be a valid defense, they must (1) instruct the jury that it must first unanimously find that the complainant did consent to the specific offense affected before considering the instruction on ineffective consent; [10] (2) instruct only with respect to those of the four grounds in HRS § 702–235 for which there is a rational basis in the evidence; (3) instruct that the burden is on the prosecution to prove an ineffective consent ground beyond a reasonable doubt; and (4) instruct the jury that as to any one of the HRS § 702–235 grounds, the jury's decision must be unanimous before the jury may return a verdict of guilty on the charge(s) involved. The court failed to do that here. Accordingly, it cannot be determined whether the jury unanimously agreed the Witness did not consent, or, if it believed the Witness consented, whether it unanimously agreed as to any one of the *appropriate* grounds for ineffective consent. The instruction, thus, was erroneous. " 'It is a grave error to submit a [criminal] case to a jury without accurately defining the offense charged and its elements.' " *State v. Holbron,* 78 Hawai'i 422, 426, 895 P.2d 173, 177 (App.1995) (quoting *State v. Pinero,* 70 Haw. 509, 527, 778 P.2d 704, 715 (1989)). Erroneous instructions are " 'presumptively harmful and are a ground for reversal unless it appears from the record as a whole that the error was not prejudicial.' " *Pinero,* 70 Haw. at 527, 778 P.2d at 715 (quoting *Turner v. Willis,* 59 Haw. 319, 326, 582 P.2d 710, 715 (1978)).

Both the State and the defense agreed to this instruction. However, we may notice plain error under Hawai'i Rules of Penal Procedure Rule 52(b) because the substantial rights of Defendant were affected. *Holbron,* 78 Hawai'i at 426, 895 P.2d at 177. We note, also, that ultimately the trial court is responsible for properly instructing the jury. "It is well settled that the trial court must correctly instruct the jury on the law." *State v. Feliciano,* 62 Haw. 637, 643, 618 P.2d 306, 310 (1980). "This requirement is mandatory to insure the jury has proper guidance in its consideration of the issues before it." *Id.* "The wrong instruction could only have 'left an erroneous impression in the minds of the jurors.' " *Holbron,* 78 Hawai'i at 426, 895

---

10. Where multiple acts are charged, it is conceivable that the complainant could be found to have failed to give consent to some, and to have given ineffective consent as to others.

P.2d at 177 (quoting *State v. Laurie*, 56 Haw. 664, 672, 548 P.2d 271, 277 (1976)). Because we conclude that the instruction given was erroneous and that none of the other instructions, taken together, cured the prejudicial impact of this instruction, we conclude that the error was prejudicial to Defendant.

## V.

Consent would also be a defense to the charge of sexual assault in the fourth degree under Count III, which charged that Defendant knowingly exposed his genitals to the Witness. In that charge, "consent negatives [the] element" that Defendant's "conduct was likely to alarm [the Witness] or put [her] in fear of bodily injury." *See* HRS § 707–733(1)(b). As in the case of the other counts, we cannot be certain whether as to this count, the jury determined that the Witness consented but that her consent was ineffective, and if it was ineffective, whether the jurors unanimously concurred on at least one of the appropriate grounds in HRS § 702–235.

## VI.

For the foregoing reasons, we must vacate the judgment and sentence as to Counts I, II, III, and IV and remand for a new trial as to those counts. Because we remand the case for a new trial, we discuss some of the other points raised by Defendant.

## VII.

The defense argues that the jury should have been given a definition for the term "consent" and should have been instructed "that Defendant could not be convicted, unless [the jury] found beyond a reasonable doubt, that [the Witness] did not impliedly or expressly consent to sexual contact and penetration."

▬▬▬ In *State v. Adams*, 10 Haw.App. 593, 880 P.2d 226, *cert. denied*, 77 Hawai'i 373, 884 P.2d 1149 (1994), this court gave "consent" its "plain and obvious" meaning,

construing the term to mean a "voluntary agreement or concurrence." *Id.* at 605, 880 P.2d at 234. "Consent" was not defined in the court's instructions here, but we believe it preferable that the term be defined since many of the other material statutory terms involved are defined.[11] In addition, Defendant argues that "reasonable jurors could have concluded that the Witness impliedly consented to sexual contact and penetration because she remained with Defendant throughout the day . . . never saying anything . . . remained alone with [Defendant] . . . in his room on two separate occasions, and went alone with [Defendant] to his car to get his wallet." While we need not decide this point because we remand for a new trial, this court in *Adams* also stated, "Consent may be express or implied, and the jury in this case was instructed that it could not convict [d]efendant unless it found beyond a reasonable doubt [the complainant] did not expressly or impliedly consent to sexual penetration." *Id.* at 605, 880 P.2d at 234 (internal quotation marks omitted). The jury here was not so instructed. If there is any rational basis in the evidence which would support a finding of implied concurrence in the charged act(s), the jury should be instructed that consent may be expressed or implied.

## VIII.

Defendant also contends that the court committed plain error in failing to instruct the jury on the defense of mistake of fact.

HRS § 702–218 (1993), the mistake of fact defense, states, in relevant part:

> **Ignorance or mistake as a defense.** In any prosecution for an offense, it is a defense that the accused engaged in the prohibited conduct under ignorance or mistake of fact *if . . . [t]he ignorance or mistake negatives the state of mind required to establish an element of the offense* [.]

(Emphases added.)

Defendant again relies, in part, on *Adams*. In *Adams*, the defendant testified he be-

---

11. We cannot conceive of any reason why the jury should not be instructed on the definition of

consent as a matter of standard practice.

lieved the complainant "was receptive to engaging in sexual activity with [him,] and that during the acts of penetration, [she] never protested or resisted[.]" *Id.* at 598, 880 P.2d at 231. This court vacated defendant's conviction for sexual assault and remanded for a new trial, ruling that the defendant was entitled to an instruction on mistake of fact "on his mistaken belief ... that he had [complainant's] consent" and that "reasonable jurors" could so "construe" the facts. Once more, if on retrial there is any rational basis in the evidence to support the defense of mistake of fact, the court must give an instruction on that defense.

## IX.

We briefly address two other points raised by Defendant. As to obtaining an on-the-record waiver of Defendant's right to testify under *Tachibana v. State,* 79 Hawai'i 226, 900 P.2d 1293 (1995), we agree it is preferable for the court to specifically inquire whether a defendant *waives* his or her right to testify. As to whether a "unanimity instruction" as required by *Arceo,* 84 Hawai'i at 32–33, 928 P.2d at 875–76, should have been given with respect to Counts I and II, we cannot foresee the evidence which will be adduced on retrial. But we think it evident that where the same multiple acts may be attributed to one count or to more than one count, deliberate care must be taken by the trial court to follow the rules set down in *Arceo.* We need not reach the other points raised by Defendant.[12]

## X.

For the foregoing reasons, we reverse Defendant's February 3, 1997 judgment of conviction and sentence as to Count V, and vacate and remand for a new trial as to Counts I, II, III, and IV.

12. Defendant also claims instructions as to lesser included offenses should have been given for the charge of sexual assault in the second degree, his counsel was ineffective for failing to call certain

witnesses, including Anthony Burris and Latoya Givens, and the court abused its discretion in sentencing him to an extended term of imprisonment.