122 P.3d 254

**STATE of Hawai'i, Plaintiff–Appellant,**

v.

**Kaleokalani YAMADA, Defendant–Appellee.**

No. 26506.

Supreme Court of Hawai'i.

Oct. 21, 2005.

James M. Anderson, Deputy Prosecuting Attorney, on the briefs, for plaintiff-appellant.

Harrison L. Kiehm, on the briefs, for defendant-appellee.

MOON, C.J., LEVINSON, and NAKAYAMA, JJ.; ACOBA, J., Dissenting; DUFFY, J., Dissenting.

Opinion of the Court by MOON, C.J.

Plaintiff-appellant State of Hawai'i [hereinafter, the prosecution] appeals from the March 15, 2004 findings of fact, conclusions of law and order of the Circuit Court of the First Circuit, the Honorable Michael A. Town presiding, granting a new trial to defendant-appellee Kaleokalani Yamada, who had been convicted of two counts of robbery in the first degree, in violation of Hawai'i Revised Statutes (HRS) § 708–840(1)(b)(i) and (ii) (Supp.1998),[1] and one count of assault in the first degree, in violation of HRS § 707–710 (1993).[2] On appeal, the prosecution contends that the trial court abused its discretion in granting Yamada's motion for new trial inasmuch as the court based its decision on the sole ground that a juror slept through twelve minutes of defense counsel's one-hour long closing argument, "without a showing of actual prejudice from the defense or a finding of prejudice by the circuit court, and where the record as a whole evinced no prejudice to defendant." For the following reasons, we vacate the circuit court's March 15, 2004 order and remand this case for sentencing.

**I. BACKGROUND**

On July 9, 2003, Yamada was charged by complaint with two counts of robbery in the first degree and one count of assault in the first degree. Trial commenced on November 24, 2003. The sole issue contested at trial was the identity of the perpetrator. During his opening statement, defense counsel stated to the jury:

> Mistaken identity, ladies and gentlemen.... The evidence will show that [Yamada] is not guilty[.] [T]he evidence will show that there are a lot of inaccuracies here. There's a lot of inconsistencies. There's reasonable doubt, and the State cannot prove these charges beyond a reasonable doubt because [Yamada] did not do this.

At trial, the prosecution presented two witnesses who positively identified Yamada in a police lineup. Yamada presented one alibi witness who testified that she was with him at her house on the night of the incident and that Yamada had remained with her until the next afternoon. Additionally, Yamada's then-employer testified for the defense as to Yamada's physical appearance and pertinent company policies regarding physical appearance to contradict the prosecution witnesses' physical descriptions of the perpetrator.

On December 2, 2003, after the court read its instructions to the jury, the parties presented closing arguments. During defense counsel's closing argument, the bailiff signaled to the judge that a juror "might be sleeping." The judge noticed that one of the jurors' "head was over," although he could not see her eyes.[3] At that point, the judge interrupted defense counsel, asking, "Everybody wide awake? Everybody awake? You can rest your eyelids, but listen." At that

---

1. HRS § 708–840 provides in pertinent part:
   **Robbery in the first degree.** (1) A person commits the offense of robbery in the first degree if, in the course of committing theft:
   ....
   (b) The person is armed with a dangerous instrument and:
   (i) The person uses force against the person of anyone present with intent to overcome that person's physical resistance or physical power of resistance; or
   (ii) The person threatens the imminent use of force against the person of anyone who is present with intent to compel acquiescence to the taking of or escaping with the property.

2. HRS § 707–710 provides in pertinent part: "A person commits the offense of assault in the first degree if the person intentionally or knowingly causes serious bodily injury to another person."

3. This particular juror later turned out to be the foreperson of the jury.

point, the judge noticed that the foreperson either "A[,] opened her eyes and was awake, or B[,] woke up." Despite the interruption, defense counsel continued his argument without repeating or requesting to repeat any portion of his argument. After the prosecution's rebuttal, the court made its final charge to the jury with instructions to return at 8:30 a.m. the next morning, unless it reached a verdict that afternoon. The jury did not reach a verdict and was, therefore, instructed to return the following day.

The next morning, outside of the jury's presence, defense counsel moved for a mistrial on the following grounds: (1) several jurors "seemed sleepy [during defense counsel's closing argument] and did not consider the closing argument" and (2) the prosecution made improper statements regarding certain evidence during its closing argument.[4] In support of Yamada's motion for mistrial, defense counsel recalled:

I think it was two or three jurors who seemed to be very sleepy. In fact, one of the jurors looked like she was sleeping. In fact, that juror turned out to be the foreperson of the jury.

The prosecution similarly recounted that another juror, Joe Gomez, appeared drowsy during closing argument:

[Prosecution]: Your honor, I did not notice [the foreperson]. However, I did notice the gentleman right next to her. I forget his name.

THE COURT: Gomez.

[Prosecution]: [Gomez] had his eyes closed so what I did is I dropped—while I was doing my closing argument, he had his eyes closed and wasn't looking at me so I dropped the pictures and made kind of a loud sound and it didn't appear that he was sleeping because as soon as I did that, he looked up and, you know, it's like he focused his attention....

After hearing further argument, the court ruled:

On the allegation there may have been a sleeping juror, I'm going to deny the mistrial now without prejudice to raise it again depending on the verdict, with your preference, [defense] counsel, to take some testimony from the foreperson if she was asleep later assuming today and if so, only [the foreperson] or Mr. Gomez[.]

The court also noted that, because a third juror, Thomas Saka, "might have had his eyes closed[,] ... I gotta talk to 'em. We gotta get it right."

After the court denied Yamada's motion, the jury returned a unanimous verdict finding Yamada guilty as charged on all counts. The court then dismissed the jury, except for the three jurors, who were believed to be sleeping during closing arguments. The court then proceeded to voir dire Saka, Gomez, and the foreperson. Of the three jurors, only Saka admitted to sleeping during the parties' closing arguments:[5]

THE COURT: [Saka], it's the procedure if someone—if a juror is perceived to maybe have closed their eyes or gone to sleep during—not the trial but closing, did at anytime during closing arguments when [the prosecution] or [defense counsel] were arguing the case, did you go to sleep?

[Saka]: I may have passed out a couple of seconds, but I did notice on the Power Point, I think it was during [the prosecution's closing argument] and when I did open them, it came back up, it was pretty much on the same bullet point.

THE COURT: What would have been the longest time that you would have gone to sleep?

[Saka]: Maybe ten, 15 seconds. I'm not sure.

THE COURT: Ten or 15 seconds? Okay....

[Prosecution]: If I understand correctly, [Saka], this was on my closing?

[Saka]: I'm pretty sure.

---

4. Specifically, Yamada argued that the prosecution referred to certain inadmissible evidence relating to Yamada's identification; however, this issue is not before this court on appeal.

5. The foreperson stated that she was not sleeping; according to her, she was merely closing her eyes as her way of "handling that kind of repetition without getting distracted with the repetitions." Gomez similarly informed the court that he "never fell asleep."

[Prosecution]: And you recall any similar event when [defense counsel] was presenting their closing?

[Saka]: I think it might have been [during defense counsel's closing argument] because actually it was on this—it was on the—this board that was being shown.

[Prosecution]: You're saying the white board underneath the clock?

[Saka]: Yes.

THE COURT: Any questions, [defense counsel]?

[Defense counsel]: Just briefly. [Saka], do you remember what bullet point it was possibly, what area?

[Saka]: No, I don't.

[Defense counsel]: Do you remember what witness I was talking about or what part of the case I was talking about?

[Saka]: Not specifically, no.

[Defense counsel]: And you said it was just ten to 15 seconds or so?

[Saka]: I think so. I think when I—you were still on the same bullet point, yes.

[Defense counsel]: And you weren't really drifting out in any part or were you drifting?

[Saka]: I may have been drifting. I'm not sure.

[Defense counsel]: You were drifting in and out throughout my closing?

[Saka]: I don't think throughout the whole thing. Maybe—

[Defense counsel]: Throughout half of it or so?

[Saka]: I think less than that.

[Defense counsel]: About how much? I'm sorry.

[Saka]: Maybe 20 percent at the most.

[Defense counsel]: 20 percent at most? Okay. Okay. And do you recall if it was basically at the beginning part of my closing or the end of my closing?

[Saka]: Probably more towards the middle.

[Defense counsel]: More towards the middle? Okay. Thank you very much.

The court summarized the jurors' statements:

It sounds to me like [the foreperson], even though her eyes were closed, was able to hear. She may have been a little drowsy, so to speak, but people get drowsy. Mr. Gomez clearly was wide awake. [Saka] said he was asleep for ten to 15 seconds, but he doesn't know. He may have missed as much as 20 percent of the defense closing.

The court dismissed the jurors and directed defense counsel to file a written motion for new trial.

On December 12, 2003, Yamada filed a motion for new trial, wherein he argued that, *inter alia,* juror misconduct deprived him of a fair trial and a new trial was required "in the interests of justice." On January 29, 2004, the court heard argument on the motion.

On March 14, 2004, the court entered an order granting Yamada's motion for new trial, finding and concluding as follows:

### FINDINGS OF FACT

1. A complaint was filed on July 9, 2003, charging [Yamada] with two (2) counts of Robbery in the First Degree and one (1) count of Assault in the First Degree for an incident that occurred on February 14, 2003. Following a jury trial, [Yamada] was convicted as charged of all offenses on December 3, 2003.

2. Defendant's Motion for a New trial (hereinafter "Motion") was filed on December 12, 2003, within the time period specified by Rule 33, *Hawai'i Rules of Penal Procedure.* Inter alia, the Motion claimed that a new trial should be granted because a juror fell asleep during defense counsel's closing argument. . . .

3. *The Court granted the Motion on the sole basis that a juror was asleep for about twenty per cent (20%) of defense counsel's closing argument, that was approximately one hour long, thus the juror was asleep for about twelve (12) minutes.*

4. The Court had "serious discomfort" with [the prosecution]'s use of the bat

as evidence establishing [Yamada]'s identity.[6]

### CONCLUSIONS OF LAW

1. This court has jurisdiction over the Motion pursuant to Rule 33, *Hawaii Rules of Penal Procedure*, as it was filed within the time period proscribed by that Rule.

2. The Motion is granted in the interest of justice. ACCORDINGLY IT IS HEREBY ORDERED that [Yamada's] Motion for a New Trial be and the same is hereby granted.

(Emphasis added).

On April 12, 2004, the prosecution filed its timely notice of appeal.

### II. *STANDARD OF REVIEW*

■ As a general matter, the granting or denial of a motion for new trial is within the sound discretion of the trial court and will not be disturbed absent a clear abuse of discretion. The same principle is applied in the context of a motion for new trial premised on juror misconduct. The trial court abuses its discretion when it clearly exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party litigant. *State v. Furutani*, 76 Hawai'i 172, 178–79, 873 P.2d 51, 57–58 (1994) (citations and quotations omitted).

*State v. Kim*, 103 Hawai'i 285, 290, 81 P.3d 1200, 1205 (2003).

### III. *DISCUSSION*

On appeal, the prosecution argues that the trial court abused its discretion by granting Yamada's motion for new trial based on a juror sleeping during defense counsel's closing argument, "without a showing of actual prejudice from the defense or a finding of prejudice by the circuit court, and where the record as a whole evinces no prejudice to [Yamada]." Specifically, the prosecution asserts that finding that a juror was sleeping, without more, does not demonstrate prejudice and that any misconduct on Saka's part was harmless because (1) he did not sleep through any testimony, evidence, or jury instructions and (2) the portion of the argument allegedly missed was not significant. Moreover, the prosecution points out that, if defense counsel believed Saka slept through significant portions of the proceedings, defense counsel was under the duty to bring the misconduct to the court's attention at that time for the court to correct the problem immediately.

■ With respect to jury misconduct, this court has noted:

The sixth amendment to the United States Constitution[7] and article I, section 14 of the Hawai'i Constitution[8] guarantee the criminally accused a fair trial by an impartial jury. *State v. Gabalis*, 83 Hawai'i 40, 45, 924 P.2d 534, 539 (1996) (citation omitted). If any juror was not impartial, a new trial must be granted. *Id.* However, *"not all juror misconduct necessarily dictates the granting of a new trial. A new trial will not be granted if it can be shown that the jury could not have been influenced by the alleged misconduct."* *Furutani*, 76 Hawai'i at 180, 873 P.2d at 59.

*Kim*, 103 Hawai'i at 290–91, 81 P.3d at 1205–06 (emphasis and brackets added) (footnote numbers altered). Consequently,

[w]hen the basis for the motion [for new trial] is juror misconduct[,] . . . *the first responsibility of the trial court is to determine whether the misconduct is of a nature which could substantially prejudice*

---

6. *See supra* note 4.

7. "The sixth amendment to the United States Constitution provides in relevant part that, '[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed. . . .'" *Kim*, 103 Hawai'i at 290–91 n. 5, 81 P.3d at 1205–06 n. 5.

8. "Article I, section 14 of the Hawai'i State Constitution, provides in relevant part that, '[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial by an impartial jury of the district wherein the crime shall have been committed. . . .'" *Kim*, 103 Hawai'i at 291 n. 6, 81 P.3d at 1206 n. 6.

*the defendant's right to a fair trial.* Whether it does rise to that level is ordinarily left to the discretion of the trial court. *[Furutani,* 76 Hawai'i at 180] 873 P.2d at 59 (citing *State v. Keliiholokai,* 58 Haw. 356, 359, 569 P.2d 891, 895 (1977)). *Where the trial court determines that the juror misconduct could substantially prejudice the defendant's right to a fair and impartial jury, a rebuttable presumption of prejudice is raised and the court must investigate the totality of circumstances to determine if the misconduct impacted the jury's impartiality. Furutani,* 76 Hawai'i at 181, 873 P.2d at 60 (citing *State v. Williamson,* 72 Haw. 97, 102, 807 P.2d 593, 596 (1991)). In order to overcome the rebuttable presumption, *the prosecution must show that the alleged deprivation of the right to a fair trial was harmless beyond a reasonable doubt. Furutani,* 76 Hawai'i at 181, 873 P.2d at 60 (emphasis added).

*State v. Adams,* 10 Haw.App. 593, 599–600, 880 P.2d 226, 231–32 (1994) (ellipses points and emphases added). Stated differently, this court, in *State v. Pauline,* 100 Hawai'i 356, 381–82, 60 P.3d 306, 331–32 (2002), noted:

> The defendant must first make a prima facie showing of a deprivation that could substantially prejudice his or her right to a fair trial by an impartial jury. We also suggested that defendant should first present *some specific, substantial evidence showing a juror was possibly biased.* Once the defendant has satisfied this burden, the trial court then determines whether the nature of the alleged deprivation rises to the level of being substantially prejudicial. If the trial court determines that the alleged deprivation is substantially prejudicial, the trial court then *becomes duty bound to further investigate the totality of circumstances surrounding the alleged deprivation to determine its impact on jury impartiality.*

(Citations, brackets, and quotation marks omitted.) (Emphases added.) Additionally, this court has stated that:

> Error is not to be viewed in isolation and considered purely in the abstract. It must

be examined in the light of the entire proceedings and given the effect which the whole record shows it to be entitled. In that context, the real question becomes[ ] whether there is a reasonable possibility that the error might have contributed to the conviction.

*State v. Perez,* 64 Haw. 232, 234, 638 P.2d 335, 337 (1981) (citation omitted).

Assuming that Saka's sleeping constituted misconduct, the trial court was under the duty to "determine whether the misconduct [was] of a nature which could substantially prejudice [Yamada]'s right to a fair trial." *Adams,* 10 Haw.App. at 599, 880 P.2d at 232. The trial court did not expressly enter a finding of prejudice, but granted the motion for new trial "on the sole basis that a juror was asleep for about ... twelve (12) minutes." Finding No. 3. Generally, courts have held that "the mere falling asleep for a short time, by a juror, during the argument of counsel for the defendant in a criminal cause, does not of itself constitute a sufficient cause for a new trial." *Whiting v. State,* 516 N.E.2d 1067, 1068 (Ind.1987) (citation omitted); *see also U.S. v. Springfield,* 829 F.2d 860, 864 (9th Cir.1987) (finding no prejudice where a juror missed a portion of witness testimony during a nap).

In *U.S. v. Barrett,* 703 F.2d 1076, *as amended,* (9th Cir.1982), the court followed the same test, noting:

> Even if the juror in the present case is found to have been asleep during portions of the trial, *a new trial may not be required if he did not miss essential portions of the trial and was able fairly to consider the case.*

*Id.* at 1083 (emphasis added); *see also State v. Hampton,* 201 Wis.2d 662, 549 N.W.2d 756 (Ct.App.1996); *State v. Wright,* 203 Kan. 54, 453 P.2d 1 (1969); *Hasson v. Ford Motor Co.,* 32 Cal.3d 388, 185 Cal.Rptr. 654, 650 P.2d 1171 (1982). Notwithstanding the trial court's failure in the instant case to make a specific finding "that the juror misconduct could ... substantially prejudice [Yamada's] right to a fair and impartial jury," *Adams,* 10 Haw.App. at 600, 880 P.2d at 232, we believe such finding was implicit in its grant of Yamada's motion for new trial. *See Ala Moana*

*Boat Owners' Ass'n v. State*, 50 Haw. 156, 158, 434 P.2d 516, 518, *reh'g denied*, 50 Haw. 181, 434 P.2d 516 (1967) (noting the "presumption of correctness and regularity that attend the decision of the lower court") (Citations omitted.). Thus, the dispositive question for us in this appeal is whether the prosecution has overcome the rebuttable presumption by showing that the alleged deprivation of the right to a fair trial was harmless beyond a reasonable doubt. We believe it has.

Initially, as the prosecution points out, there is nothing in the record of the instant case to suggest that Saka slept through any of the evidence adduced at trial[9] or any of the jury instructions that were given. There is also nothing in the record to suggest that he was unable to fully participate in jury deliberations. At the hearing on the motion for new trial, defense counsel argued that his client was substantially prejudiced because Saka missed crucial arguments "focused on reasonable doubt and the inability of the [prosecution] to prove the charges beyond a reasonable doubt."

■ During closing argument, defense counsel focused on: (1) his contention that the prosecution's witnesses mistakenly identified Yamada; (2) the lack of physical evidence confirming Yamada's involvement; and (3) what constitutes reasonable doubt. As noted *supra*, the defense presented its theories of mistaken identity and lack of evidence during his opening statement. Further, the defense's theory of the case was clearly presented to the jury during the presentation of the its two witnesses. Moreover, the prosecution argues that there is nothing to suggest that Saka did not hear the instructions given prior to the parties' closing arguments, which included an explanation of the reasonable doubt standard:

> What the law requires before the defendant can be found guilty is not suspicion, not probabilities, but proof of the defendant's guilt beyond reasonable doubt.
>
> What is reasonable doubt? It is a doubt in your mind about the defendant's guilt which arises from the evidence presented

or from the lack of evidence and which is based on reason and common sense. Each of you must decide individually whether there is or is not such a doubt in your mind after careful and impartial consideration of the evidence.... What is proof beyond a reasonable doubt? If, after consideration of the evidence and the law, you have a reasonable doubt of the defendant's guilt, then the prosecution has not proved the defendant's guilt beyond a reasonable doubt, and it is your duty to find the defendant not guilty.

> If, after consideration of the evidence and the law, you do not have a reasonable doubt of the defendant's guilt, and it is your duty to find the defendant guilty.

> You must consider only the evidence that has been presented to you in this case and such inferences therefrom as may be justified by reason and common sense.

Even if Saka was sleeping and did not hear a portion of defense counsel's closing arguments, he was given the correct instruction, and we presume he followed it. *See State v. Kupihea*, 80 Hawai'i 307, 317–18, 909 P.2d 1122, 1132–33 (1996). We, therefore, believe, based on the totality of circumstances, that the prosecution has met its burden in establishing that the alleged deprivation of the right to a fair trial was harmless beyond a reasonable doubt.

The dissent, relying on *People v. Evans*, 710 P.2d 1167 (Col.), *reh'g denied, cert. denied*, 710 P.2d 1167 (1985), maintains that, because closing argument is "one of the most consequential parts of the trial," *id.* at 1168, juror inattention during argument is prejudicial. In our view, the decision of the court in *Evans* is consistent with our cases and those of other jurisdictions that require more than an assertion that a juror's inattention—or that sleeping *per se*—constitutes prejudice, dictating the need for a new trial. In *Evans*, one of the jurors was asleep during defense counsel's closing argument. Defense counsel, however, was unaware of the misconduct until the trial court initiated contempt proceedings against the juror following the ver-

---

9. As this court has previously noted, "arguments of counsel are not evidence." *State v. Quitog*, 85

Hawai'i 128, 144, 938 P.2d 559, 575 (1997) (citation omitted).

dict. Even after finding that the juror's conduct was "unsatisfactory[ ] and was contemptuous of the seriousness of what we are talking about here," *id.,* the trial court denied defendant's motion for judgment of acquittal, or alternatively for a new trial because it believed that the facts "d[id] not suggest that the defendant's rights were violated." *Id.*

On appeal, the Colorado Court of Appeals agreed "with [the trial court's] conclusion that the juror's inattention during that stage of the proceedings was not only 'contemptuous of the court, *but contemptuous of the rights of the defendant.'* " *Id.* (emphasis added). Recognizing the inconsistency between the trial court's finding that the juror's misconduct was "contemptuous of the rights of the defendant" and its ruling that the defendant's rights were not violated, the appellate court stated: "Since the trial court obviously determined that the juror's misconduct was sufficiently grave to warrant a contempt proceeding and imposition of a penalty, we fail to see how this same misconduct falls short of *constituting prejudice to the defendant.*" *Id.* (emphasis added). In other words, the appellate court clearly recognized that the juror's inattention was not merely a case of sleeping *per se,* but that the juror's conduct was so egregious it not only warranted a contempt proceeding, but resulted in a finding of contempt, which the appellate court equated with a finding of prejudice.

In the instant case, the trial court, unlike *Evans,* specifically determined that its grant of a new trial was based "sole[ly on the fact] that a juror was asleep ... for twelve minutes [of defense counsel's closing argument]," *see* Finding No. 3., and nothing more. Although we do not condone jurors sleeping or being otherwise inattentive while court is in session, we recognize—as did the Supreme Court of California in *Hasson v. Ford Motor Company,* 32 Cal.3d 388, 185 Cal.Rptr. 654, 650 P.2d 1171 (1982), that, at some point during a trial, even the most diligent jurors may be less than one hundred percent focused on the proceedings and may "reach the end of [their] attention span at some point during a trial and allow [their] mind[s] to wander temporarily from the matter at hand." *Id.* at 1190. At the outset, we em-phasize that our citation to *Hasson* should not be construed as indicating our agreement with the ultimate decision to affirm the trial court's denial of the defendant's motion for new trial given the totality of circumstances of the incidents of juror misconduct described therein. As indicated, *infra,* we cite with approval the principles espoused by the California Supreme Court with regard to a jury's duty and the rebuttable presumption that arises from any juror misconduct.

In *Hasson,* the court addressed a number of instances of juror misconduct, including allegations of inattentiveness. The misconduct involved, *inter alia,* five of twelve jurors reading a novel or other extraneous materials and/or doing crossword puzzles while witnesses and evidence were being presented. It was alleged that such activities occurred " 'over approximately a one-month period,' '[o]n many occasions,' and 'intermittently over a period of many days.' " *Id.* at 1185. In addressing the arguments made by the parties, the California Supreme Court prefaced its analysis by stating:

> We agree with the basic premise that a jury's failure to pay attention to the evidence presented at trial is a form of misconduct which will justify the granting of a new trial *if shown to be prejudicial to the losing party.* The duty to listen carefully during the presentation of evidence at trial is among the most elementary of a juror's obligation.

*Id.* (emphasis added). The court concluded that,

> by failing to fulfill their duty of attentiveness, the jurors committed misconduct.
>
> *This conclusion does not end our discussion, however, because a new trial is required only if it can be established that [the defendant] was somehow prejudiced by the jurors' inattentiveness.* Prejudice exists if, in the absence of proven misconduct, it is reasonably probable that a result more favorable to the complaining party would have been achieved.
>
> ....
>
> ... [The defendant] urges that we should presume prejudice from the fact of inattentiveness alone. In *People v. Honeycutt* (1977) 20 Cal.3d 150, 156, 141 Cal.

Rptr. 698, 570 P.2d 1050, we stated: "It is well settled that *a presumption of prejudice arises from any juror misconduct. . . . However, the presumption may be rebutted by proof that no prejudice actually resulted.*"

*Id.* at 1188 (emphases added).

Although the trial court in the instant case did not explicitly determine that the juror's sleeping constituted misconduct, we agree with its implicit finding that, by sleeping for twelve minutes, the juror breached his duty of attentiveness and that he was, therefore, guilty of juror misconduct. However, as emphasized by the court in *Hasson* and as this court has repeatedly stated, "not all juror misconduct necessarily dictates the granting of a new trial." *Kim,* 103 Hawai'i at 290–91, 81 P.3d at 1205–06 (citation omitted). As previously stated, once the trial court determines that juror misconduct could substantially prejudice the defendant's right to a fair and impartial jury,—which we believe was implicit in the trial court' granting of a new trial,—a rebuttable presumption is raised, and the prosecution must then show that the alleged deprivation of the right to a fair trial was harmless beyond a reasonable doubt. And, as previously discussed, we agree with the prosecution that, based on the totality of circumstances, the juror misconduct in this case was harmless beyond a reasonable doubt.

Finally, we emphasize, as the court did in *Hasson,* that:

Retrials are to be avoided unless necessitated by a more substantial dereliction of jurors' duties than was evident in this case.[10] "Society has a manifest interest in avoiding needless retrials: they cause hardship to the litigants, delay the admin-

istration of justice, and result in social and economic waste."

*Id.* at 1190 (citation omitted). We believe that the requirements set forth in our case law and as discussed herein provide the assurance that the hardship and delay of a new trial are not needlessly imposed.

Accordingly, we hold that the trial court abused its discretion in granting a new trial.

## IV.  CONCLUSION

Based on the foregoing, we vacate the circuit court's March 15, 2004 order granting a new trial and remand this case for sentencing.

Dissenting Opinion by ACOBA, J.

I respectfully disagree.

A slumbering juror is not a competent one. While the prejudicial effect of such conduct may rest on the specific facts of a case, in light of our case law we ought not to establish the legal precedent in this jurisdiction that sleeping through twenty percent of a defendant's final argument, especially that pertaining to reasonable doubt, is legally sustainable. The juror here admitted to sleeping through "20% at the most" of defense counsel's closing argument and perhaps through 10–15 seconds of the prosecutor's closing argument.

## I.

While closing argument is not evidence, it is the opportunity afforded the parties to sum up their cases, to establish the relevancy of the evidence to the law and to persuade the jurors as to their theory of the case. What may appear disjointed and unrelated during the evidentiary phase of the trial may

10. Again, we reiterate that we do not concur with the *Hasson* court's assessment of the jurors' conduct in that case. In fact, it would appear that the dissent's view would have been more appropriate:

This misconduct was pervasive, involving *five* of the twelve jurors including the "forewoman." It continued over an extended period of time, variously described as "approximately a one-month period," or "over a period of several weeks," or "on many occasions," or "intermittently over a period of many days." It

occurred *"while witnesses and evidence were being presented."* **The misconduct was not the momentary dozing of a single juror in an isolated incident.** Rather, it involved almost half the jury in frequent, prolonged, intentional mental activity of a type that was diverting and that required thought and contemplation. . . . Such activities, in my opinion, were wholly incompatible with a juror's duties[.]

*Hasson,* 185 Cal.Rptr. 654, 650 P.2d at 1193 (Richardson, J., dissenting) (underscored emphases in original) (bold emphasis added).

be brought into comprehension and understanding for the jurors in final argument. Quoting the United States Supreme Court, this court has concurred that

> [i]t can hardly be questioned that closing argument serves to sharpen and clarify the issues for resolution by the trier of fact in a criminal case. *For it is only after all the evidence is in that counsel for the parties are in a position to present their respective versions of the case as a whole.* Only then can they argue the inferences to be drawn from all the testimony, and point out the weaknesses of their adversaries' positions. *And for the defense, closing argument is the last clear chance to persuade the trier of fact that there may be reasonable doubt of the defendant's guilt.*
>
>  . . . .
>
> [*Herring v. New York,*] 422 U.S. [853, 862, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975)] (footnotes and citations omitted).

*State v. Vliet,* 91 Hawai'i 288, 294–95, 983 P.2d 189, 195–96 (1999) (emphases added). Inasmuch as the defense was unable "to present [its] respective version[ ] of the case as a whole[,]" *id.* at 295, 983 P.2d at 196, the majority's conclusion that such a deficiency was cured because the jurors heard the evidence and the instructions on reasonable doubt is not convincing. Majority opinion at 478–480, 122 P.3d at 259–60. In *People v. Evans,* 710 P.2d 1167 (Colo.Ct.App.1985), one of the jurors slept during defense counsel's closing argument. The bailiff, as in the instant case, brought this to the trial court's attention. The trial court denied the defendant's motion for judgment of acquittal or, alternatively, for a new trial. In vacating the court's denial, the Court of Appeals declared that a new trial must be afforded the defendant because it was "imperative" the defendant have an effective "opportunity" to present closing argument before consideration of the case by the jurors.

The purpose of closing argument is to "sharpen and clarify the issues for resolution by the trier of fact." T. Borillo, 6 *Criminal Practice and Procedure* § 897 (1977 Pocket Part). Therefore, it is imperative that the defendant enjoy the opportunity to marshall the evidence before submission of the case.

We agree with the trial court that closing argument is "one of the most consequential parts of the trial" and with its conclusion that the juror's inattention during that stage of the proceedings was not only "contemptuous of the court, but contemptuous of the rights of the defendant." *Id.* at 1168. The majority construes *Evans* as requiring more than the presence of a sleeping juror, but the majority concedes the court's finding of substantial prejudice "was implicit in its grant of [the] motion for a new trial[ ]" filed by Defendant–Appellant Kaleokalani Yamada (Defendant). Majority opinion at 478, 122 P.3d at 258. Hence, the fact that in *Evans* the trial court failed to grant a new trial even though finding the juror's conduct contemptuous of the rights of the defendant is not distinguishable in principle from this case. For after taking testimony from the jurors regarding the sleeping allegation, the court in the instant case had to have found prejudice to Defendant because it ordered a new trial. Therefore, the Colorado appellate court's reversal of the trial court in *Evans* and remand for a new trial was consistent with the course chosen by the court in our case, in granting a new trial.

Jurors decide the weight to be given the evidence and, thus, ultimately are the judges of the facts. Hence, it is fundamental in our jurisprudence that a defendant's right to a fair trial entitles the defendant to the considered judgment of each juror as to the appropriate vote to cast. The defendant is also guaranteed a juror's independent judgment as to the appropriate verdict in a case. The same applies to the presentation of the prosecution's case. Such considered independent judgment cannot be exercised properly by a juror if that juror is in effect, absent from the trial. The verdict necessarily rested on the unanimous vote of the jurors. Hence the misconduct of even one juror is significant.

## II.

The effect of the juror's misconduct additionally rendered the trial fundamentally unfair. In this case the juror apparently listened to all but a few seconds of the ar-

gument of Plaintiff–Appellant State of Hawai'i but was not cognizant of a substantial part of Defendant's argument. The result is that Defendant's access to the juror was significantly curtailed, as was the juror's consideration of Defendant's position. Quoting again, from the United States Supreme Court opinion in *Herring*, this court has agreed that

> [t]he very premise of our adversary system of criminal justice is that partisan advocacy on both sides of a case will best promote the ultimate objective that the guilty be convicted and the innocent go free. In a criminal trial, which is in the end basically a factfinding process, *no aspect of such advocacy could be more important than the opportunity finally to marshal the evidence for each side before submission of the case to judgment.*
>
> . . . .
>
> 422 U.S. at [862, 95 S.Ct. 2550] (footnotes and citations omitted).

*Vliet,* 91 Hawai'i at 295, 983 P.2d at 196 (emphasis added). As observed by the Supreme Court, there is no aspect in the "adversary system of criminal justice" "more important than the opportunity finally to marshal the evidence," *id.,* in closing argument for the jurors before the judgment. Infringement of that right deprives the defense of the opportunity to present a complete defense. Under such circumstances, Defendant's right to a fair trial was substantially prejudiced. *See e.g., State v. Staley,* 91 Hawai'i 275, 282, 982 P.2d 904, 911 (1999) ("The due process guarantee of a fair trial under the fourteenth amendment to the United States Constitution and article 1, section 14, of the Hawai'i Constitution confers upon the accused in criminal proceedings a meaningful opportunity to present a complete defense." (Emphasis, internal quotation marks, and citations omitted.)); *State v. Matafeo,* 71 Haw. 183, 185, 787 P.2d 671, 672 (1990) ("The due process guarantee of the Federal and Hawaii constitutions serves to protect the right of an accused in a criminal case to a fundamentally fair trial. Central to the protections of due process is the right to be accorded a meaningful opportunity to

present a complete defense." (Internal quotation marks and citations omitted.)); *State v. Lowther,* 7 Haw.App. 20, 23, 740 P.2d 1017, 1019 (1987) ("The due process guarantee of a fair trial under the constitutions of both the United States and Hawaii requires that criminal defendants be afforded a meaningful opportunity to present a complete defense." (Internal quotation marks and citations omitted.)).

Considerations of constitutional magnitude such as whether the defendant was afforded the opportunity to present a complete defense exemplify why the majority's cite to *Hasson v. Ford Motor Co.,* 32 Cal.3d 388, 185 Cal.Rptr. 654, 650 P.2d 1171 (1982), is simply not germane. The majority cites *Hasson* for the proposition that even the most attentive and committed juror may not be one hundred percent focused on the proceedings at hand at some point and may allow his or her mind to wander temporarily. Majority opinion at 481, 122 P.3d at 261. *Hasson* was a products liability civil action arising from brake failure in a 1966 Lincoln Continental. *Id.* at 1176. Testimony involved the design of the car's braking system, the boiling point of brake fluid and its "hygroscopic quality," and details of the plaintiff's injuries and the trial spanned over a period of *"nearly three months."* *Id.* at 1176–78 (emphasis added). In *Hasson,* declarations of three jurors stated that one juror was reading a novel and other jurors were working crossword puzzles during trial proceedings. *Id.* at 1184–1185. Four of the five jurors accused of misconduct signed counter declarations which stated in part that, "I specifically deny that I did not pay attention to the testimony of witnesses and evidence being presented during the trial ... [and] I specifically state that I did pay attention to all testimony and evidence presented during the trial." *Id.* at 1185. While the majority cites *Hasson* for an ordinary proposition which is not controverted, even it disavows any deference to be given to the *Hasson* holding. Majority opinion at 481, 122 P.3d at 261.

*Hasson* is clearly distinguishable and inapplicable. The instant case involves a juror who was asleep for twelve minutes, not merely distracted, as in *Hasson.* Here, the juror admitted to being asleep during "20% at

most" of defense counsel's closing argument and approximately 10–15 seconds of the prosecutor's closing argument and did not profess to have been paying attention during those periods. The instant case lasted only nine days rather than three months and included testimony regarding robbery, assault, and the identity of the perpetrator. Sleep took place during what this court has confirmed is a crucial stage of a criminal trial. There are vast differences between civil and criminal trials, not the least of which is the requirement that the prosecution prove its case beyond a reasonable doubt in criminal trials—the very subject addressed in closing argument as the juror in the instant case slept. On any principled basis it must be concluded the juror misconduct in this case was not harmless beyond a reasonable doubt.

### III.

Here the court did everything it was supposed to do in making an inquiry into the juror misconduct. Under our case law, the court's decision is entitled to substantial deference by virtue of the abuse of discretion standard. As this court originally held in *State v. Sacoco*, 45 Haw. 288, 292, 367 P.2d 11, 13 (1961), "a discretion vested in a trial court and exercised by it will not be disturbed unless it affirmatively appears that there has been a plain abuse of such discretion."

"[T]o constitute an abuse it must appear that the court clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." *Id. See, e.g., State v. Iuli*, 101 Hawai'i 196, 203, 65 P.3d 143, 150 (2003) ("An abuse of discretion occurs when the trial court exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party litigant." (Quotation marks and citation omitted.)). In light of the circumstances of this case, the broad deference given the court under the abuse of discretion standard,

and the law related above, the court did not "clearly exceed[ ] the bounds of reason or disregard[ ] rules or principles of law or practice to the substantial detriment of a party litigant." *Sacoco*, 45 Haw. at 292, 367 P.2d at 13. This court's prior resolute affirmation of the importance of final argument in criminal cases that echoed the same declarations by the United States Supreme Court, plainly outweighs other cases cited by the majority. *See* majority opinion at 478, 122 P.3d at 258.

Deference to the court is also compelled because here the trial judge has been engaged with the jurors in the trial of the case, questioned and instructed them, and observed them and attended to them over several days. *See e.g., Golsun v. United States*, 592 A.2d 1054, 1058 (D.C.1991) (with respect to sleeping jurors, the court of appeals "accord[ed] the trial court substantial deference in exercising its discretion because of the court's familiarity with the proceedings, its observations of the witnesses and lawyers, and its superior opportunity to get a feel for the case" (citing *Johnson v. United States*, 398 A.2d 354, 362 (D.C.1979)); *Yoon v. Consolidated Freightways, Inc.*, 726 S.W.2d 721, 723 (Mo.1987) (in case involving jurors dozing during trial, the Missouri Supreme Court stated that "[t]he trial judge who directs the course of the trial and personally observes the basis of the ruling is in the best position to know the effect of the error[ ]" (citations omitted))). Having also conducted the necessary inquiry of the three subject jurors pursuant to Defendant's motion, the court's assessment of the impact of a juror's sleep on the deliberation and verdict of the jury should be given controlling weight in view of our case law.[1] Thus, the court's order for a new trial should be affirmed.

**Dissenting Opinion by DUFFY, J.**

I respectfully dissent. The record presented does not show that the circuit court

---

1. I agree with the dissent of Justice Duffy that emphasizes this point. As noted *supra*, the consequence of the majority's decision *is* in effect to establish the rule that sleeping through twenty percent of a defendant's final argument regarding proof beyond a reasonable doubt is legally allowable. Because of our case law on closing argument, *see State v. Vliet*, 91 Hawai'i 288, 983 P.2d 189 (1999), it would be a rare *criminal* case where such conduct would not amount to prejudice.

abused its discretion in granting a new trial based on juror misconduct. As the dispute between the majority and dissenting opinion of Justice Acoba itself demonstrates, reasonable people can reasonably differ in their judgment as to whether the sleeping juror could have substantially prejudiced Yamada's right to a fair trial. Under the abuse of discretion standard, therefore, it cannot be said that the circuit court clearly exceeded the bounds of reason in ordering a new trial. *See State v. Lumbrera,* 252 Kan. 54, 845 P.2d 609 (1992) ("If reasonable people could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court has abused its discretion.").

In my view, where, as here, reasonable people can reasonably differ, reversal of the circuit court's decision constitutes an inappropriate intrusion on the province of the trial court to make determinations regarding the credibility of jurors and the effect of juror misconduct upon Yamada's right to a fair trial. Generally, appellate courts refuse to interfere with the discretion of a trial judge in matters involving the jury because only the trial judge has the opportunity and ability to consider the credibility of the jurors. *See, e.g., State v. Kelly,* 331 S.C. 132, 502 S.E.2d 99, 104 (1998) ("The trial court has broad discretion in assessing allegations of juror misconduct" because "[t]he trial judge is in the best position to determine the credibility of the jurors; therefore, [the court] should grant him broad deference on this issue."); *State v. Whitesell,* 270 Kan. 259, 13 P.3d 887, 909 (2000) (In cases of juror misconduct, "[a] high degree of appellate deference is allowed a trial judge's exercise of discretion in assessing the texture and feel of the trial, the credibility of witnesses, and the perceived impact of an allegedly prejudicial event."). Here, however, the majority expressly places itself in the trial court's stead. In examining the "totality of circumstances" that leads it to conclude that the sleeping juror did not substantially prejudice Yamada's right to a fair trial, the majority reasons:

> [T]here is nothing in the record of the instant case to suggest that Saka slept through any of the evidence[ ] adduced at trial or any of the jury instructions that were given. There is also nothing in the

record to suggest that he was unable to fully participate in jury deliberations.

> . . . .

> Even if Saka was sleeping and did not hear a portion of defense counsel's closing arguments, he was given the correct instruction and we presume he followed it. . . . We, therefore, believe, based on the totality of circumstances, that the prosecution met its burden in establishing that the alleged deprivation of the right to a fair trial was harmless beyond a reasonable doubt.

Majority Opinion at 480, 122 P.3d at 260. The majority further reasons that, based upon its own review of the record, the defendant could not have been prejudiced because the points presented in the closing argument were also presented in the defense's opening statement or in the jury instructions. Majority Opinion at 480, 122 P.3d at 260.

Having in effect conducted a *de novo* review of the record, the majority then substitutes its judgment for that of the trial court. Its conclusion can thus be restated as the holding that, as a matter of law, a sleeping juror does not substantially prejudice a defendant's right to a fair trial if the missed portion of the trial was (in the appellate court's judgment) repetitious. Although it purports to consider the "totality of the circumstances," the majority leaves no room for circumstances not contained in the transcripts and record, such as the voice, demeanor, conduct, and presentation of the jurors both throughout the trial and during the voir dire for misconduct.

Factors such as demeanor, voice, and conduct must necessarily have affected and influenced the circuit court's decision as to the weight and credibility to assign to Saka's testimony regarding his falling asleep. This court has repeatedly held that it will not review decisions of trial courts which are dependent on credibility or weight. *See, e.g., State v. Stocker,* 90 Hawai'i 85, 90, 976 P.2d 399, 404 (1999) (an appellate court will not review determinations dependent upon the credibility of witnesses or weight of the evidence because such determinations are the sole province of the trier of fact). Here, the circuit court was the trier of fact with respect

to the motion for a new trial. *See State v. Gabalis*, 83 Hawai'i 40, 46, 924 P.2d 534, 540 (1996) (at a hearing on a motion for a new trial based on allegations of juror misconduct, the trial judge acts as the trier of fact). Having heard the entire case, it conducted a voir dire of the allegedly sleeping jurors; evaluated their statements, demeanor, and conduct; and ultimately concluded that Yamada's right to a fair trial had been prejudiced. Under these facts, therefore, I am unable to conclude that the circuit court abused its discretion in granting a new trial based on juror misconduct.

Accordingly, I would affirm the circuit court's order granting a new trial based on juror misconduct.