**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-23-0000601**
**25-SEP-2024**
**07:52 AM**
**Dkt. 88 SO**

CAAP-23-0000601

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

STATE OF HAWAIʻI, Plaintiff-Appellee, v.
KAMAUA VAN GIESON, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CRIMINAL NO. 1CPC-22-0001475)

SUMMARY DISPOSITION ORDER
(By: Leonard, Acting Chief Judge, Hiraoka and McCullen, JJ.)

Defendant-Appellant Kamaua Van Gieson (**Van Gieson**) appeals from the September 21, 2023 Amended Judgment of Conviction and Sentence; Notice of Entry (**Judgment**) entered by the Circuit Court of the First Circuit (**Circuit Court**).[1] At the conclusion of a jury-waived trial, Van Gieson was convicted of Murder in the Second Degree in violation of Hawaii Revised Statutes (**HRS**) §§ 707-701.5 (2014)[2] and 706-656 (2014).[3]

---

[1] The Honorable Kevin A. Souza presided.

[2] HRS § 707-701.5 provides:

**§ 707-701.5 Murder in the second degree.** (1) Except as provided in section 707-701, a person commits the offense of murder in the second degree if the person intentionally or knowingly causes the death of another person.

(continued...)

Van Gieson raises three points of error on appeal, contending that the Circuit Court erred by: (1) denying Van Gieson's various motions for acquittal, and by finding him guilty, despite insufficient evidence to show that he had the requisite knowing or intentional state of mind with respect to the drowning of Dustin Molina (**Molina**); (2) failing to find that Van Gieson met his burden, by a preponderance of the evidence, to prove the affirmative defense that at the time of the act in question, Van Gieson was laboring under an extreme mental and/or emotional disturbance (**EMED**); and (3) denying Van Gieson's motion for judgment of acquittal, dismissal, and/or new trial.[4]

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Van Gieson's points of error as follows:

(1) Van Gieson argues that there was insufficient evidence of the requisite level of intent to commit murder

---

[2](...continued)
> (2) Murder in the second degree is a felony for which the defendant shall be sentenced to imprisonment as provided in section 706-656.

[3] HRS § 706-656 states, in relevant part:

> **§ 706-656 Terms of imprisonment for first and second degree murder and attempted first and second degree murder.**
>
> . . . .
>
> (2) Except as provided in section 706-657, pertaining to enhanced sentence for second degree murder, persons convicted of second degree murder and attempted second degree murder shall be sentenced to life imprisonment with possibility of parole.

[4] Van Gieson makes no separate argument in support of his third point of error and we thus construe it as incorporating or summarizing his other points.

because, to convict, the court must have found that each act, circumstance, and result must have occurred with intent or knowledge to kill Molina.

Van Gieson points to, *inter alia*, the testimony of the chief medical examiner, Dr. Masahiko Kobayashi (**Dr. Kobayashi**) who concluded that it was the combined effect of a stab wound to the neck and drowning that caused Molina's death.

Dr. Kobayashi testified that the stab wound went deep, through the muscle tissue inside the neck, and punctured the internal jugular vein. There was white foam in Molina's mouth and airways, and the lungs were hyperinflated, with less than two cups fluid in the chest cavity and a small amount of fluid in the sphenoid sinus, which were indications of drowning. Dr. Kobayashi stated that he did not think that the stab wound to the neck alone was sufficient to cause death, and it is probable Molina remained conscious and was alive when he went into the water.

Van Gieson's cousin, Larry "Kaipo" Ballenti (**Ballenti**), testified, *inter alia*, that he picked up Van Gieson sometime after 8:45 p.m. on the day of Molina's death, and as they were driving from Waiʻanae to ʻAiea, Van Gieson told Ballenti that, "I went stab him." Ballenti testified that Van Gieson also told him:

> [T]hey [Van Gieson and Molina] went from Maili, St. John's, they went across the road to the bus stop to talk, and that's where he stabbed him, the boy, Dustin, in his neck. And he was bleeding a lot, and then from there, he said he took him to the water to try to swim him out.

When reviewing the sufficiency of evidence on appeal, the court applies the following standard of review:

3

> [E]vidence adduced in the trial court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction; the same standard applies whether the case was before a judge or jury. The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact.

State v. Kalaola, 124 Hawaiʻi 43, 49, 237 P.3d 1109, 1115 (2010) (citations omitted).

"Substantial evidence" is "credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion." Id. (citation omitted).

> The standard to be applied by the trial court in ruling upon a motion for a judgment of acquittal is whether, upon the evidence viewed in the light most favorable to the prosecution and in full recognition of the province of the trier of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt. An appellate court employs the same standard of review.

State v. Hicks, 113 Hawaiʻi 60, 69, 148 P.3d 493, 502 (2006) (ciation omitted).

"[T]he granting or denial of a motion for new trial is within the sound discretion of the trial court and will not be disturbed absent a clear abuse of discretion." State v. Yamada, 108 Hawaiʻi 474, 478, 122 P.3d 254, 258 (2005) (citation omitted).

Van Gieson contends that the only inference that can be drawn from his swimming Molina out to sea was that he intended to hide evidence, not drown Molina, and because the evidence shows he thought Molina was already dead when he swam the body out to sea, the defense of mistake applies. HRS § 702-218 (2014) provides:

> **§ 702-218 Ignorance or mistake as a defense.** In any prosecution for an offense, it is a defense that the accused engaged in the prohibited conduct under ignorance or mistake of fact if:

4

> (1) The ignorance or mistake negatives the state of mind required to establish an element of the offense; or
>
> (2) The law defining the offense or a law related thereto provides that the state of mind established by such ignorance or mistake constitutes a defense.

Van Gieson's position ignores other evidence in the record from which the Circuit Court could infer an intentional or knowing intent to cause Molina's death, including but not limited to Dr. Kobayashi's testimony that it was probable that Molina was conscious when he went into the water. The court was under no obligation to accept Ballenti's interpretation that "swim him out" merely meant Van Gieson intended to get rid of Molina's dead body. In rendering its verdict, the Circuit Court noted other evidence supporting its determination that the mens rea element was satisfied, including Van Gieson's statements to the effect that if he could not have his ex-girlfriend, no one else would.

We conclude that considering all of the evidence adduced at trial, when viewed in the strongest light for the State and giving full play to the right of the fact finder to determine credibility, weigh the evidence, and draw justifiable factual inferences, a reasonable mind could fairly conclude that Van Gieson was guilty beyond a reasonable doubt.

(2) Van Gieson argues that the Circuit Court erred in finding that the evidence did not establish an EMED defense.

HRS § 707-702 (2014) provided, in relevant part:[5]

> **§ 707-702 Manslaughter.** . . .
>
> (2) In a prosecution for murder or attempted murder in the first and second degrees it is an affirmative

---

[5] HRS § 707-702 was amended in 2018 and 2019.

> defense, which reduces the offense to manslaughter or attempted manslaughter, that the defendant was, at the time the defendant caused the death of the other person, under the influence of extreme mental or emotional disturbance for which there is a reasonable explanation. The reasonableness of the explanation shall be determined from the viewpoint of a reasonable person in the circumstances as the defendant believed them to be.

For HRS § 707-702(2) to apply to reduce an offense to Manslaughter, the defendant must have been under an EMED at the time of the offense, and there must be a reasonable explanation measured under a subjective/objective test. State v. Kaiama, 81 Hawaiʻi 15, 25-26, 911 P.2d 735, 745-46 (1996).

"It is insufficient for a criminal defendant merely to allege that he or she was experiencing emotional distress at the time of the charged offense." State v. Perez, 90 Hawaiʻi 65, 74, 976 P.2d 379, 388 (1999). "[T]he mitigating EMED defense focuses on the defendant's reaction to the stress, *i.e.*, on whether the defendant's reason was overborne." Id. (cleaned up).

Van Gieson presented no evidence or witnesses and argued this defense based upon evidence adduced at trial relating to the breakup with his ex-girlfriend. Van Gieson points to Ballenti's testimony that, prior to Molina's death, Van Gieson had told Ballenti that he went to his ex-girlfriend's house and tried to strangle her, but everybody woke up. Ballenti testified that Van Gieson became suicidal because of the break up. A mutual friend of Van Gieson and Molina, Jayson Salvador (**Salvador**), testified that Van Gieson once told him that he would kill somebody if his girlfriend was with them.

In rejecting the EMED defense, the Circuit Court noted that the testimony showed Van Gieson's actions were deliberate

and intentional on the night of the killing. Van Gieson did not appear upset when he arrived at Salvador's house, where Molina was present with friends, and Van Gieson was friendly to everyone. He isolated Molina from the group, telling Salvador and Roycen Kaawa, another friend who was present, that he only needed one person to walk him to the bus stop. When the friends got concerned, and went and found them at Māʻili Beach, Van Gieson appeared calm, and the friends did not sense any problem. After the killing, when Ballenti picked up Van Gieson at Hale Wai Vista apartments, Van Gieson appeared relaxed to Ballenti and asked to be taken to Aiea because there was "too much heat on the west side." Early that same evening, Van Gieson had asked to borrow a car from Ballenti, then asked for a ride to the Māʻili location when Ballenti refused, and then asked to borrow "darker clothes," because he could not be seen. On this record, we cannot conclude that the Circuit Court erred in rejecting Van Gieson's argument that he was laboring under EMED at the time he committed the offense.

For these reasons, the Circuit Court's September 21, 2023 Judgment is affirmed.

DATED: Honolulu, Hawaiʻi, September 25, 2024.

On the briefs:

Kai Lawrence,
for Defendant-Appellant.

Stephen K. Tsushima,
Deputy Prosecuting Attorney,
City and County of Honolulu,
for Plaintiff-Appellee.

/s/ Katherine G. Leonard
Acting Chief Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Sonja M.P. McCullen
Associate Judge