**Electronically Filed
Intermediate Court of Appeals
CAAP-21-0000216
31-MAR-2023
08:18 AM
Dkt. 58 SO**

NO. CAAP-21-0000216

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

STATE OF HAWAIʻI, Plaintiff-Appellee,
v.
RYLEE ANUHEA FETUAO RAMSEYER, Defendant-Appellant

APPEAL FROM THE DISTRICT COURT OF THE FIRST CIRCUIT
KĀNEʻOHE DIVISION
(CASE NO. 1DTA-18-02818)

SUMMARY DISPOSITION ORDER
(By:  Ginoza, Chief Judge, Leonard and Nakasone, JJ.)

Defendant-Appellant Rylee A.F. Ramseyer (**Ramseyer**) appeals from the "Order and Notice of Entry of Order" entered by the District Court of the First Circuit (**District Court**)[1] on February 12, 2021, in which she was convicted after a bench trial of Operating a Vehicle Under the Influence of an Intoxicant (**OVUII**) in violation of Hawaii Revised Statutes (**HRS**) § 291E-61(a)(1).[2]

---

[1]  The Honorable Sherri-Ann L. Iha presided.

[2]  HRS § 291E-61(a)(1) (Supp. 2018) provides:

> (a) A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle:
> > (1)   While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty[.]

On appeal, Ramseyer raises five points of error: (1) the District Court erred in relying on the testimony of Honolulu Police Department (**HPD**) Sergeant Sherman Dowkin (**Sgt. Dowkin**) because he testified that he did not have a present recollection of Ramseyer's Standardized Field Sobriety Test (**SFST**) performance; (2) the District Court erred in denying Ramseyer's motion to suppress the results of the SFST because the medical rule-out questions constituted "custodial interrogation"; (3) the District Court erred in denying her motion for new trial due to fundamental fairness; (4) the District Court's Tachibana colloquy was defective; and (5) the Complaint did not meet the requirements of HRS § 805-1.

For the following reasons, we agree with Ramseyer's second point of error, that the District Court's denial of Ramseyer's motion to suppress the medical rule-out questions must be vacated. To the extent that Ramseyer's third and fifth points of error are relevant on remand to the District Court, we also address these points below.

At approximately 1:50 a.m. on August 7, 2018, Sgt. Dowkin observed Ramseyer's vehicle in the left lane on Kailua Road "weaving continuously".  Ramseyer's vehicle then entered into the left-turn lane on Kailua Road and came to a stop three quarters of the way past the white stop line, halfway blocking the crosswalk.  Ramseyer's vehicle then "turned left wide onto Kalanianaʻole Highway onto the right shoulder where it remained for about a hundred feet, weaving on the shoulder."  Sgt. Dowkin observed Ramseyer's vehicle slowly drift back into the lane after about a hundred feet.  At some point, Kalanianaʻole Highway turned into two lanes and Sgt. Dowkin observed Ramseyer's vehicle continue to slowly weave between lanes, and paced Ramseyer's speed over the speed limit.

Sgt. Dowkin pulled Ramseyer over, observed that Ramseyer was the only occupant in the vehicle, informed her of the reasons for the stop, and requested Ramseyer's driver's license, registration, and no-fault insurance card.  Sgt. Dowkin

2

observed Ramseyer had red, watery, bloodshot eyes, noticed a very strong odor of alcohol coming from her breath, and that she was slurring her speech. Sgt. Dowkin then offered Ramseyer the SFST to which she consented and exited her vehicle. Sgt. Dowkin asked her the medical rule-out questions and after the SFST, HPD Officer Francis Yanagi arrested Ramseyer for OVUII, and Sgt. Dowkin issued a citation for "[d]isregarding a red light and for crossing a solid white line which separates the shoulder from the main travel portion of the roadway."

**(1)** We first address Ramseyer's second point of error as it is dispositive. Ramseyer contends the District Court erred in failing to suppress Ramseyer's responses to the medical rule-out questions and the results of the SFST as "fruit of the poisonous tree" because the medical rule-out questions constituted custodial interrogation which triggered Miranda warning requirements. Ramseyer argues that the District Court cited her performance on the SFST as one of the primary factors in its decisions and without Ramseyer's responses to the medical rule-out questions and the subsequent SFST, there was no substantial evidence to support conviction.

"An appellate court reviews a ruling on a motion to suppress *de novo* to determine whether the ruling was 'right' or 'wrong.'" State v. Weldon, 144 Hawai'i 522, 530, 445 P.3d 103, 111 (2019) (quoting State v. Tominiko, 126 Hawai'i 68, 75, 266 P.3d 1122, 1129 (2011)).

In addressing Ramseyer's argument that the medical rule-out questions constituted custodial interrogation, we first review the District Court's finding that Ramseyer was not in custody at the time Sgt. Dowkin asked the medical rule-out questions and conducted the SFST.

The Hawai'i Supreme Court has recently reaffirmed that a person is in custody for purposes of Miranda warnings as required by the Hawai'i Constitution:

> [I]f an objective assessment of the totality of the circumstances reflects either (1) that the person has become impliedly accused of committing a crime because the

> questions of the police have become sustained and coercive, such that they are no longer reasonably designed briefly to confirm or dispel their reasonable suspicion <u>or (2) that the point of arrest has arrived because either (a) probable cause to arrest has developed</u> or (b) the police have subjected the person to an unlawful "de facto" arrest without probable cause to do so.

<u>State v. Hewitt</u>, SCWC-16-0000460, 2023 WL 2523652, at *8-9 (Haw. Mar. 15, 2023) (emphasis added) (quoting <u>State v. Ketchum</u>, 97 Hawaiʻi 107, 126, 34 P.3d 1006, 1025 (2001)).  In <u>Hewitt</u>, the Hawaiʻi Supreme Court expressly overruled its previous holding in <u>State v. Sagapolutele-Silva</u>, 151 Hawaiʻi 283, 511 P.3d 783 (2022), to the extent that the majority in <u>Sagapolutele-Silva</u> "eliminated the bright-line 'probable cause' test for custody and required analyzing 'custody' based on multiple factors[,]" including probable cause as a factor.  <u>Hewitt</u>, 2023 WL 2523652, at *10.  Therefore, <u>Miranda</u> warnings are required when probable cause to arrest has developed. <u>Id.</u> (citing <u>Ketchum</u>, 97 Hawaiʻi at 126, 34 P.3d at 1025).

> Probable cause exists when the facts and circumstances within one's knowledge and of which one has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution to believe that an offense has been committed. This requires more than a mere suspicion but less than a certainty.

<u>State v. Maganis</u>, 109 Hawaiʻi 84, 86, 123 P.3d 679, 681 (2005) (emphasis and citation omitted).

During the hearing on Ramseyer's motion to suppress, Sgt. Dowkin testified that as he observed Ramseyer's driving, he thought that the driver may be impaired "[p]ossibly when the person stopped past the stop line."  Sgt. Dowkin also testified that after he stopped Ramseyer, he observed that Ramseyer's eyes "appeared to be red, bloodshot and watery[,] [t]here was a very strong alcoholic-type beverage odor on her breath and her speech sounded a little bit slurred."  Sgt. Dowkin testified Ramseyer's speech was slurred in that the words were indistinct, ran together, and some words "drug out some of the syllables."  He also noticed the odor of alcohol almost immediately upon approaching her window.  Sgt. Dowkin asked Ramseyer to produce

4

her driver's license, vehicle no-fault insurance and vehicle registration, and she complied.  Prior to asking Ramseyer if she was willing to perform the SFST, her documents were in Sgt. Dowkin's possession and she was not free to leave.

Given the record in this case, we conclude that based on Sgt. Dowkin's testimony of his observations of Ramseyer's driving and his interactions with her after the stop, there was sufficient probable cause that she was operating her vehicle while under the influence of an intoxicant, such that Ramseyer was in custody prior to the medical rule-out questions. See State v. Ogata, NO. CAAP-18-0000619, 2020 WL 3430060, at *3 (Haw. App. June 23, 2020) (SDO) (holding officer had probable cause to arrest defendant for OVUII after defendant was removed from his vehicle and officers observed, *inter alia*, that defendant could not respond to questions or verbal commands, and "was very disoriented; had red, bloodshot, and watery eyes; slurred speech; gave off a strong odor of alcohol; and could not stay on his feet"); State v. Bayardelger, NO. CAAP-19-0000344, 2020 WL 3056088, at *2 (Haw. App. June 9, 2020) (SDO) (holding there was substantial evidence to convict defendant of OVUII even without evidence of the SFST based on officer's testimony that he observed defendant's vehicle drift out of its lane of travel five times over the course of about a mile, and after stopping defendant, noticed a very strong odor of alcohol coming from inside the vehicle, the odor appeared stronger or coming from defendant, and defendant had red, watery, and glassy eyes); State v. Brown, NO. CAAP-18-0000542, 2019 WL 1323990, at *1 (Haw. App. Mar. 25, 2019) (SDO) (holding there was substantial evidence to convict defendant for OVUII where officer testified Brown's vehicle swerved from one lane of traffic into another lane, almost hit a vehicle, and accelerated through a red light; after the officer pulled Brown over for the traffic violations, the officer noticed Brown had red, water, and glassy eyes, slurred speech, and had the strong smell of alcohol coming from his breath).

5

In this case, probable cause to arrest Ramseyer for OVUII had developed and therefore, Ramseyer was in custody before being asked the medical rule-out questions.  We thus turn to whether the medical rule-out questions and the SFST were "interrogation" requiring Miranda warnings prior to questioning and administration.

In State v. Skapinok, 151 Hawaiʻi 170, 185, 510 P.3d 599, 614 (2022), the Hawaiʻi Supreme Court held that all seven medical rule-out questions preceding the SFST while Skapinok was in custody, were likely to elicit an incriminating response and therefore Miranda warnings were required, and Skapinok's answers must be suppressed.  Here, based on Sgt. Dowkin's testimony, the seven medical rule-out questions in Skapinok are the same or substantially similar to the questions Sgt. Dowkin asked Ramseyer.[3]  Therefore, the medical rule-out questions Sgt. Dowkin asked Ramseyer while she was in custody were "interrogation" requiring Miranda warnings and the District Court erred in failing to suppress Ramseyer's responses to the medical rule-out questions.

Finally, Ramseyer argues that her performance on the SFST should have been suppressed as "fruit of the poisonous tree" because the medical rule-out questions constituted custodial interrogation which triggered Miranda warning requirements.  We disagree.

"The 'fruit of the poisonous tree' doctrine prohibits the use of evidence at trial which comes to light as a result of the exploitation of a previous illegal act of the police." Skapinok, 151 Hawaiʻi at 186, 510 P.3d at 615 (brackets, citation, and internal quotation marks omitted).  In Skapinok, the Hawaiʻi Supreme Court held that "[b]ecause Skapinok was in

---

[3]  During the hearing on Ramseyer's motion to suppress, Sgt. Dowkin testified that one of his questions during the medical rule-out questions was whether Ramseyer was wearing corrective lenses.  During the bench trial on January 14, 2021, Sgt. Dowkin testified that he asked Ramseyer whether she had an artificial or glass eye, the same question in Skapinok. 151 Hawaiʻi at 184, 510 P.3d at 613.

custody at the time the officer asked [the medical rule-out questions], Miranda warnings were required, and her answers to them must be suppressed." Id. at 185, 510 P.3d at 614.  However, the supreme court explained, "[a]lthough they immediately preceded the SFST in time, the medical rule-out questions did not give the officers information that led them to search for evidence of intoxication, nor did the medical rule-out questions pique their suspicions such that their investigation was 'directed' towards discovering evidence of intoxication." Id. at 186, 510 P.3d at 615 (brackets and internal quotation marks omitted) (quoting State v. Manion, 151 Hawai'i 267, 273, 511 P.3d 766, 772 (2022)).

In both Skapinok and Manion, the officers had already set out to administer the SFST before asking the medical rule-out questions and both defendants agreed to participate in the SFST prior to any interrogation, i.e., the medical rule-out questions. Skapinok, 151 Hawai'i at 187, 510 P.3d at 616; Manion, 151 Hawai'i at 273, 511 P.3d at 772.  The same is true in this case.  Prior to asking the medical rule-out questions and administering the SFST, Sgt. Dowkin offered Ramseyer the SFST and Ramseyer agreed to participate.  Therefore, "[t]he officers did not exploit the illegality by continuing to gather evidence that they had already set out to gather."  Skapinok, 151 Hawai'i at 187, 510 P.3d at 616 (quoting Manion, 151 Hawai'i at 273, 511 P.3d at 772).

Therefore, the District Court did not err in admitting Ramseyer's performance on the SFST into evidence.

**(2)** Ramseyer argues that the District Court abused its discretion in denying her Motion for New Trial due to fundamental fairness because the State failed to advise her of a forthcoming plea offer to similarly situated defendants.  Ramseyer argues that after she was found guilty on January 14, 2021, the prosecutor's office sent out an email to all deputy prosecuting attorneys on January 25, 2021, setting forth terms of a plea offer developed to address the backlog of OVUII cases that arose due to the pandemic.

> As a general matter, the granting or denial of a motion for new trial is within the sound discretion of the trial court and will not be disturbed absent a clear abuse of discretion. . . . The trial court abuses its discretion when it clearly exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party litigant.

State v. Yamada, 108 Hawaiʻi 474, 478, 122 P.3d 254, 258 (2005) (citation omitted).

Although Ramseyer claims the plea deal was offered to "[d]efendants in the same situation as Ramseyer[,]" she fails to show that, even if the District Court granted her motion, the State would have offered the plea to her. To the contrary, during the hearing on April 1, 2021, the State argued that

> if there was a new trial, it will be up to the State or the next deputy to see if we're going to extend that plea offer to you folks. But with that being said, I can't even guarantee that we're going to offer, even if a trial was granted, we're going to offer the same deal in the future[.]

Moreover, based on our review of the record, it appears there were two hearings during which the District Court heard arguments related to a Motion for a New Trial. Although Ramseyer provides the transcripts for the April 1, 2021 hearing, she fails to provide transcripts for the February 11, 2021 hearing. See State v. Hoang, 93 Hawaiʻi 333, 334, 3 P.3d 499, 500 (2000) ("When an appellant desires to raise any point on appeal that requires the consideration of the oral proceedings before the court appealed from, the appellant bears the burden to show error by reference to matters in the record, and he or she has the responsibility of providing the relevant transcript.")

The District Court's minutes for the February 11, 2021 hearing state: "Defense stated that they filed a Motion for a New Trial, and if granted, she was hoping to take advantage of the State's offer. Deputy Prosecuting Attorney Dominic Jancaterino stated for the record that the State objects, trial had, and she was found guilty." Thereafter, the minutes state that, "Deputy Prosecuting Attorney Chase Sakai present, informed Court that he

was able to talk to his boss, State's position is that they would be objecting, and would not be offering the deal."

Without the transcripts for the February 11, 2021 hearing, we are unable to fully review the District Court's decision to deny Ramseyer's Motion for New Trial during the April 1, 2021 hearing, which references the discussion from the February hearing. Based on this record, the District Court did not err in denying Ramseyer's Motion for New trial.

**(3)** Finally, Ramseyer relies on State v. Thompson, 150 Hawaiʻi 262, 500 P.3d 447 (2021) and contends the Complaint in this case did not comply with the requirements of HRS § 805-1 because the Complaint was signed by the deputy prosecuting attorney but was not supported by a declaration and was not signed by a complainant.[4]

The Hawaiʻi Supreme Court recently held that under the plain language of HRS § 805-1 and case law interpreting past versions of HRS § 805-1, the statute only applies to complaints

---

[4] HRS § 805-1 (2014) provides:

> **§805-1 Complaint; form of warrant.** When a complaint is made to any prosecuting officer of the commission of any offense, the prosecuting officer shall examine the complainant, shall reduce the substance of the complaint to writing, and shall cause the complaint to be subscribed by the complainant under oath, which the prosecuting officer is hereby authorized to administer, or the complaint shall be made by declaration in accordance with the rules of court. If the original complaint results from the issuance of a traffic summons or a citation in lieu of an arrest pursuant to section 803-6, by a police officer, the oath may be administered by any police officer whose name has been submitted to the prosecuting officer and who has been designated by the chief of police to administer the oath, or the complaint may be submitted by declaration in accordance with the rules of court. Upon presentation of the written complaint to the judge in whose circuit the offense allegedly has been committed, the judge shall issue a warrant, reciting the complaint and requiring the sheriff, or other officer to whom it is directed, except as provided in section 805-3, to arrest the accused and to bring the accused before the judge to be dealt with according to law; and in the same warrant the judge may require the officer to summon such witnesses as are named in the warrant to appear and give evidence at the trial. The warrant may be in the form established by the usage and practice of the issuing court.

that seek a penal summons or an arrest warrant.  <u>State v. Mortensen-Young</u>, SCAP-22-0000045, 2023 WL 2519396 *7, *11-13 (Haw. Mar. 15, 2023).  In <u>Mortensen-Young</u>, a consolidated appeal, the appellees were charged in separate cases with the offense of OVUII.  <u>Id.</u> at *1, *4 n.5.  When the State filed the complaints, the appellees had already been arrested and released on bail before forty-eight hours had passed.  <u>Id.</u> at *9, 14.  The supreme court rejected the appellees' arguments that <u>Thompson</u> and HRS § 805-1 applied to their cases because the State did not use the complaints to seek a penal summons or an arrest warrant.  <u>Id.</u> at *7.  The court held that under the circumstances in that case, the state properly initiated the criminal proceedings pursuant to Rule 7 of the Hawaiʻi Rules of Penal Procedure (**HRPP**).  <u>Id.</u> at *14.

Here, similar to <u>Mortensen-Young</u>, Ramseyer was arrested for OVUII after being stopped, and she was released on bail the same day with notice to appear in the District Court on September 4, 2018.  <u>See</u> HRPP Rule 5(a).  Thus, a penal summons or an arrest warrant was not issued in this case and was not necessary.  Ramseyer makes no argument that the complaint failed to comply with HRPP Rule 7.

Given our rulings above, we need not address Ramseyer's first and fourth points of error.

Therefore, based on the foregoing, the February 12, 2021 "Order and Notice of Entry of Order" entered by the District Court of the First Circuit is vacated.  This case is remanded for a new trial consistent with this opinion.

DATED:  Honolulu, Hawaiʻi, March 31, 2023.

On the briefs:

Alen M. Kaneshiro,
for Defendant-Appellant

Donn Fudo,
Deputy Prosecuting Attorney,
for Plaintiff-Appellee

/s/ Lisa M. Ginoza
Chief Judge

/s/ Katherine G. Leonard
Associate Judge

/s/ Karen T. Nakasone
Associate Judge